**Oscar C. GLOVER III, Appellant,**

v.

**STATE of Missouri, Respondent.**

**No. SC 88373.**

Supreme Court of Missouri,
En Banc.

June 12, 2007.

Mark A. Grothoff, Office of the Public Defender, Columbia, MO, for Appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., Roger W. Johnson, Asst. Atty. Gen., Jefferson City, MO, for Respondent.

PER CURIAM.[1]

## INTRODUCTION

Oscar Glover was convicted of two counts of possessing drugs with intent to distribute in violation of section 195.211.[2] The convictions were affirmed on appeal. *State v. Glover*, 98 S.W.3d 917 (Mo.App. 2003). Glover then filed this motion pursuant to Rule 29.15. He failed to sign the motion or the amended motion.

His amended motion alleged ineffective assistance of counsel: (1) in trial counsel's failure to object to the prosecutor's closing argument that vouched for a witness' testimony and (2) in appellate counsel's failure to raise on appeal the trial court's failure to sustain his objection to testimony concerning a videotape described as showing Glover engaging in sexual intercourse. The motion court denied relief. Glover appeals.

On appeal, the state raised the issue of Glover's lack of signature. Glover promptly filed a signed motion in the motion court.

Glover's lack of signature did not affect the motion court's jurisdiction. The motion court's judgment is affirmed.

## THE LACK OF A SIGNATURE ON A POST–CONVICTION MOTION IS NOT A JURISDICTIONAL DEFECT

Glover's motion and amended motion were not signed by him. The defect was not brought to his attention until the initial respondent's brief was filed on appeal. When so informed, Glover promptly filed a properly signed motion with the motion

---

1. The Court of Appeals, Southern District, transferred this case to this Court after an opinion authored by the Honorable Nancy Steffen Rahmeyer. *Mo. Const. article V, sec-*tion 10. Parts of that opinion are incorporated without further attribution.

2. All statutory references are to RSMo 2000.

court, and a certified copy was sent to the court of appeals.

When originally adopted, Rule 29.15 required the movant to verify the motion and any amended motion. Rule 29.15(b), (d) and (f) (1988). The verification requirement was an essential element of the post-conviction motion. Any unsigned, unverified motion failed to invoke the motion court's jurisdiction to grant relief. *Kilgore v. State*, 791 S.W.2d 393, 395 (Mo. banc 1990). Gradually, through court rulings and amendments to the rule, the consequences of failing to sign a post-conviction motion have become less severe. *State v. White*, 873 S.W.2d 590, 594 (Mo. banc 1994) (signature of movant is sufficient to meet verification requirement); *Tooley v. State*, 20 S.W.3d 519, 520 (Mo. banc 2000) (decided after verification requirement deleted from Rule 29.15) (holding Rule 55.03(a) applies to Rule 29.15 motions and that case should not have been dismissed before time for filing amended motion expired); *Wallingford v. State*, 131 S.W.3d 781, 782 (Mo. banc 2004) (Rule 55.03 permits prompt correction of signature omission in rule 29.15 motion even after time to file amended motion has expired).

◼ As noted in *Hensel v. American Air Network, Inc.*, 189 S.W.3d 582, 583 (Mo. banc 2006), the purpose of the signature requirement is not to deprive litigants of a right of action. The Court holds, therefore, that for purposes of Rule 29.15 and Rule 24.035 the signature requirement is not jurisdictional and is subject to the sanctions of Rule 55.03. To the extent they contain language or hold to the contrary, *Tooley*, *Wallingford*, and similar cases are overruled.[3]

**3.** If the unsigned motion is first noted on appeal, the movant can file a properly signed motion in the trial court with notice to the appellate court as was done in this case. To

## GLOVER WAS NOT DENIED EFFECTIVE ASSISTANCE OF COUNSEL

### The videotape evidence was properly admitted

Police were investigating Glover's condominium because of complaints of heavy traffic in and out of it. Glover shared the condominium with Nathaniel Meadows. After a two-week surveillance, a search warrant was executed. The police found marijuana and other items in the master bedroom, including a red coat in the bedroom closet. The coat contained a small measuring scale, three plastic baggies of crack cocaine, some personal documents with Glover's name, his social security card, a list of people who had not paid for the drugs, and a videotape.

◼ Conviction of possession of a controlled substance with intent to distribute requires proof of: 1) actual or constructive possession of the controlled substance; 2) knowledge or awareness of its presence or nature, and 3) intent to distribute. *MAI–CR 3d 325.08*. To show constructive possession, the state had to show, at a minimum, that Glover had "access to and control over the premises where the substance was found." *State v. Purlee*, 839 S.W.2d 584, 588 (Mo. banc 1992). Where there is joint control of an area, something additional is required to connect the accused to the drugs. *Id.* For example, presence of a defendant's personal belongings in close proximity to the drugs may support an inference that he possessed the drugs. *State v. Foulks*, 72 S.W.3d 322, 326 (Mo. App.2002).

the extent *Denny v. State*, 179 S.W.3d 381, 383 (Mo.App.2005), requires a different procedure, it is overruled.

There are two types of relevant evidence, logical and legal. *State v. Tisius*, 92 S.W.3d 751, 760 (Mo. banc 2002). Evidence is logically relevant if it tends to make any fact at issue more or less probable or tends to corroborate other relevant evidence. *Id.* Legal relevance is a determination of the balance between the probative and prejudicial effect of the evidence. *Id.*

The jury never saw the videotape nor did it hear a detailed description of the contents. There was testimony from an officer that he had viewed the tape and that it depicted Glover engaging in sexual intercourse. The prosecutor then argued in closing that the personal nature of the videotape showed that only Glover would have had it. He further argued that the presence of the personal tape with the drugs in the master bedroom closet, along with numerous other personal items belonging to Glover in the room, supported the conclusion that Glover occupied the master bedroom and possessed the drugs.

In this case, Glover contended he did not possess the drugs—Meadows did. Clearly, the personal nature of the tape in the same coat as the drugs in the master bedroom closet made it more probable that Glover was the possessor of the coat and, thus, in constructive possession of the drugs. The tape was logically relevant.

The limited testimony that the videotape showed Glover engaging in sexual intercourse was not so prejudicial as to convict him without regard to the videotape's probative value. The probative value on the issue of who would have possession of that videotape was relatively high and the prejudicial value relatively low. Balancing the probative value and prejudicial effect of the evidence rests within the sound discretion of the trial court. *State v. Hayes*, 88 S.W.3d 47, 60 (Mo.App.2002). In this case, the trial court did not abuse that discretion by admitting the videotape evidence.

As the videotape evidence was properly admitted, appellate counsel was not ineffective in failing to raise the issue on appeal. Failing to raise a nonmeritorious claim does not convict counsel of being ineffective. *State v. Nunley*, 923 S.W.2d 911, 924 (Mo. banc 1996).

## The prosecutor did not vouch for a witness

Glover also claims that his trial counsel failed to act as a reasonably competent attorney under the same or similar circumstances "by failing to object to the State's improper closing argument in which the prosecutor personally vouched for a witness, Nathaniel Meadows." Glover called Meadows as a witness to substantiate Glover's contention that the drugs belonged to Meadows. After Meadows admitted to writing a statement claiming ownership of the drugs, Meadows made a second statement where he admitted that the drugs in the small bedroom were his and admitted that he had sold drugs, but said the drugs in the master bedroom were not his. Meadows explained that he lied in his first statement after Glover asked him to "take the rap for him."

Meadows further testified that his second statement was the true one and claimed he was telling the truth in the second statement and at trial. Meadows was questioned by both the prosecutor and Glover's counsel about the contradictory statements. On redirect, Meadows testified:

[Glover's Counsel]: But instead, you backed up and said, "No, wait. I was lying the first time I gave a sworn statement. This sworn statement is the real truth," right?

[Meadows]: Yes.

[Glover's Counsel]: Okay.

[Meadows]: The second statement is.

[Glover's Counsel]: And today you're sitting here saying, "Hey, listen. What I'm saying today is the truth," right?

[Meadows]: Yes.

. . . .

[Glover's Counsel]: Mr. Meadows, are you aware that perjury is also a crime?

[Meadows]: Yes.

[Glover's Counsel]: To testify falsely under oath?

[Meadows]: Yes.

[Glover's Counsel]: And you're still willing to hold out to the jurors that your testimony today is true, is that correct?

[Meadows]: Yes.

During closing argument, the prosecutor referred to Meadow's testimony about telling the truth: "Nathaniel also sat in that chair and told you, quote, I told the truth, end quote, with regard to his second statement. . . ." Glover's counsel then argued that the only testimony linking Glover to the master bedroom and the drugs hidden there was from Meadows and Meadows could not be believed because he was a "self-proclaimed liar."

The prosecutor on rebuttal stated:

Much has been made of—of Nate, and I've covered that a little bit. The defense wants you to believe that Nate is lying; however, Nate took responsibility for the marijuana and cocaine that was in his room. Yes, he had an agreement with the State, but that makes no difference because Nate told you the truth. He sat there and told you.

. . . .

Nate did, however, come back in and did tell the truth, and he told you the truth in court today.

Glover claims the rebuttal argument of the prosecutor constituted improper personal vouching for a witness and his attorney should have objected to it. He argues that had trial counsel objected to the "improper arguments," there is a reasonable probability that the outcome of Glover's case would have been different.

Vouching occurs when a prosecutor implies that he or she has facts establishing the veracity of a state's witness that are not before the jury for their consideration. *State v. Ringo*, 30 S.W.3d 811, 822 (Mo. banc 2000). Stating that a witness is telling the truth does not constitute vouching as long as the prosecutor does not imply that the statement is based on evidence not before the jury. The prosecutor's statements that Meadows was telling the truth did not refer to facts outside the evidence or infer that the prosecutor had evidence that was unknown to the jury. He specifically referred to Meadows' trial testimony and to defense counsel's statements that Meadows was a liar. As such, it was not improper vouching.

The motion court's finding of no ineffective assistance of counsel on this claim is not clearly erroneous.

## CONCLUSION

The judgment is affirmed.[4]

All concur.

<hr/>

4. The trial court committed a clerical error by

failing to note in the sentence and judgment

that Glover was "found to be a prior and persistent offender under Section 195.275, 195.291" as it announced at the sentencing hearing. Such an error in the judgment may be corrected provided that it was the result of an oversight or omission. *Rule 29.12(c)*.