In the ESTATE OF Earl J. CONARD, deceased.

Wendell Conard, Respondent;

Dean Conard, Respondent,

v.

William Engel, Linda Engel and Jay Engel, Appellants.

No. WD 68624.

Missouri Court of Appeals, Western District.

Oct. 21, 2008.

Motion for Rehearing and/or Transfer to Supreme Court Denied Nov. 25, 2008.

Application for Transfer Denied Jan. 27, 2009.

Michael D. Fitzgerald, Kansas City, MO, for appellant.

David Berniel Parman, Albany, MO, for respondent.

Before THOMAS H. NEWTON, C.J., LISA W. HARDWICK and ALOK AHUJA, JJ.

ALOK AHUJA, Judge.

William, Linda, and Jay Engel (the "Engels") appeal the circuit court's Judgment, which dismissed their claims against the Estate of Earl J. Conard on the basis that the original claims the Engels filed before the statutory bar date were unsigned and therefore fatally deficient. Because we find that the Engels promptly filed signed amended claims after the omission was brought to their attention, and that their original claims were otherwise sufficient under the relaxed pleading standards applicable in this context, we reverse and remand.

## I. Factual and Procedural Background

Earl J. Conard died intestate on April 7, 2006. At the time he was a resident of Worth County. On April 24, 2006, the Circuit Court of Worth County, Probate Division, issued Letters of Administration appointing Wendall Conard and Dean Conard (the "Conards") as the Co–Personal Representatives of Earl Conard's Estate. Notice of the issuance of the Letters of Administration was published on May 3, 2006; pursuant to § 473.360.1,[1] claimants had until November 3, 2006, within which to file claims against the Estate.

On July 14, 2006, the Engels filed three handwritten, *pro se* claims against the Estate, alleging that they had provided various goods and services to Earl Conard prior to his death, and to the Estate thereafter.

The first claim, entitled "Earl J. Conard funeral bill," was in the amount of $7,337.50. It alleged that, although the Conards had promised to pay Earl Conard's funeral bill after the receipt of life insurance proceeds, they had failed to do so. The claim stated that, given the Co-

nards' failure to pay, "[w]e decided to pay the bill as it was due." An itemized Statement of Funeral Goods and Services Selected, issued by the funeral home, was attached. It specified "[b]illing to" Linda Engel, and was signed by William J. Engel, Jr. A receipt issued by the funeral home, also attached, identifying "William J. Engel" as the remitter of full payment by check.

The second handwritten claim, totaling 11 pages, was entitled "Amounts due for feeding and managing cow herds for Earl J. Conard." This claim, for a total of $89,136.00, describes agricultural services performed for Earl Conard in 1996 and in 2001–06, as well as a calculation of amounts due to the claimant for such services. Within the document itself, the claimant is identified only as "Bill."

The third handwritten claim, for $1,993.88, related to the "Cost for getting cattle in for sale." A document titled "My intentions to help," dated May 11, 2006, was attached to this claim, and was signed by Jay Engel and the Conards. This document describes the services Jay Engel would—and would not—perform to assist the Conards in getting control over, feeding, and arranging for the sale of Earl Conard's livestock after his death. Two additional attached sheets listed services performed on particular dates; one of those attached sheets was also signed by Jay Engel.

None of the Engels' original claims were themselves signed. These were the only claims filed against Earl Conard's Estate.

The filing of the Engels' claims was noted in a July 14, 2006 docket entry as follows:

1. Unless otherwise indicated, all statutory references are to RSMo 2000.

Wm. J. Engel files claim for 89,136.00 for feeding and managing cow herds for Decedent.

Wm. J. Engel files claim for 7337.50 for funeral bill for the deceased.

Jay Engel files claim for 1993.88 for getting cattle in for sale.

The trial judge then assigned to the case made the following docket entry on July 17, 2006:

This Judge reviews certain filings herein on July 14, 2006 which filings may be construed as claims against the estate—albeit not in perfect form. Clerk directed to provide copies of said filings to the attorney for the estate. So Ordered.

In compliance with the judge's instructions, the clerk mailed the three claims to the Conards and their attorney, under a cover letter which stated: "Enclosed please find copies of claims filed by Jay Engel and Wm. J. Engel Jr. along with docket sheet of 7/17/06."

On October 12, 2006, William Engel filed a handwritten notice stating that "I William J. Engel Jr. request a hearing on my claims against the Earl J. Conard Estate." On October 23, 2006, the circuit court held a hearing at which both the Engels and the Conards were represented by counsel. The Engels' counsel entered his appearance by stating that "I represent William, Linda, and Jay Engel, the claimants." The court noted that "[t]here are claims filed by the Engels against the estate." There is no reference during the on-the-record discussion to any deficiency in the Engels' claim documents, or any purported difficulty the Conards were experiencing in identifying the claimants. Pursuant to the parties' "collective recommendation," the claims were set for trial on November 30, 2006, consolidated with a claim filed by Wendall Conard against the Engels for discovery of assets allegedly held by the Engels but rightfully belonging to the Estate.

On November 27, 2006, the Conards filed a Motion to Dismiss the Engels' claims, or in the alternative, for a more definite statement. The Conards' November 27 motion did not specifically refer to the lack of signatures on the Engels' original claims or the Conards' inability to identify the claimants, but instead alleged that the claims "fail[ ] to state a claim upon which relief can be granted," because they "do[ ] not give reasonable notice to the Co–Personal Representatives of the nature and extent of the claim made, [are] not in proper form, and [are] not specific enough so that a ruling thereon will become res judicata of the matters involved."

The Engels' counsel did not appear at the January 29, 2007 hearing on the Conards' Motion, and their claims were accordingly dismissed. The court's Judgment Dismissing Claim, dated January 30, 2007, states that:

Counsel for the Co–Personal Representatives also notes for the record and the Court takes judicial notice of the fact that claimant's claim fails to comply with Section 472.080.1, RSMo., in that it does not contain a statement that the claim is made under oath or affirmation and that its representations are true and correct to the best knowledge and belief of the person signing it or that it is subject to the penalties of making a false affidavit or declaration.

The circuit court subsequently set aside this dismissal after concluding that counsel had failed to appear through no fault of his own.

The Engels filed their First Amended Claim Against Estate on January 31, 2007, and their Second Amended Claims Against Estate on February 20, 2007. Both the First and Second Amended Claims were verified by the Engels' notarized signa-

tures. The nature of the Engels' three claims, and the amounts claimed, were not altered by either amendment.

On May 1, 2007, the Conards filed separate motions to dismiss each of the Engels' Second Amended Claims. Although the Conards' motions argue that the Engels' original claims failed to adequately identify the claimants, none of the motions specifically argue that the original claims were defective due to the lack of signatures.

On June 1, 2007, the circuit court issued its Order and Judgment granting the Conards' Motions to Dismiss the Engels' Second Amended Claims with prejudice. The sole basis cited by the trial court for dismissing the Engel' claims was that, pursuant to § 473.380.1, "the original documents filed on July 14, 2006 had to have been signed by the claimant or by some person on the claimant's behalf with knowledge of the facts supporting the claim."

## II. Standard of Review

"A motion to dismiss is an attack on the petition and solely a test of the adequacy of the pleadings." *Rychnovsky v. Cole,* 119 S.W.3d 204, 208 (Mo.App. W.D.2003). "Upon review of a judgment granting a motion to dismiss, we must determine if the facts pleaded and the reasonable inferences therefrom state any grounds for relief." *Id.* "Our review is a de novo examination of whether the petition invokes principles of substantive law." *Estate of Clark,* 83 S.W.3d 699, 702 (Mo.App. W.D. 2002).

## III. Analysis

■ In their sole Point Relied On, the Engels argue that the circuit court erred in dismissing their claims "because the original claims filed July 14, 2006 were sufficient to give notice of the nature and extent [of their claims] and [the] identity of the claimants," and thus satisfied § 473.380.1's minimum requirements. If their original claims were sufficient, the Engels contend further that their Second Amended Claims should relate back to the filing of the original claims.

Section 473.380.1 states, in relevant part:

No claim other than for costs and expenses of administration shall constitute a claim against an estate unless it is in writing, stating the nature and amount thereof, if ascertainable, and is signed by the claimant, or by some person for him who has knowledge of the facts[.]

Section 473.380 does not specify any sanction for a claimant's failure to file a properly signed claim prior to the claims bar date.

■ We conclude that the circuit court erred in relying exclusively on § 473.380.1 when it concluded that the failure to sign the original claims was a fatal defect mandating their dismissal. Although Rule 41.01(a)(2)[2] provides that the Supreme Court's Rules of Civil Procedure do not apply *in toto* to "actions governed by the probate code," Rule 41.01(b) expressly states that "Rule[ ] . . . 55.03 . . . appl[ies] to proceedings in the probate division of the circuit court." *See In re Estate of Klauber,* 59 S.W.3d 512, 514 (Mo. banc 2001) ("Rules 41.01(a) and (b) . . . expressly apply to probate proceedings only those civil rules that are specifically mentioned in the rule or made applicable by court order."). Rule 55.03(a) states, in relevant part, that

Every pleading, motion, and other filing shall be signed by at least one attorney . . . or, if the party is not represented by an attorney, shall be signed by the party. . . . An unsigned filing . . . shall be stricken *unless the omission is corrected*

**2.** All rule references are to Supreme Court Rules (2008).

*promptly after being called to the attention of the attorney or party filing same.*

(Emphasis added.) [3]

The Supreme Court of Missouri has made clear that, under Rule 55.03(a), "the lack of a signature is not necessarily fatal to the filing of a petition." *Hensel v. Am. Air Network, Inc.*, 189 S.W.3d 582, 583 (Mo. banc 2006); *see also Carter v. State*, 181 S.W.3d 78, 79–80 (Mo. banc 2006). Instead, under the Rule, "[t]he issue ... becomes whether the omission was corrected promptly after being called to the attention of the attorney or party filing the same." *Hensel*, 189 S.W.3d at 583. "[T]he record must disclose that the omission of a signature was called to the attention of the attorney or party to permit its prompt correction before a filing may be stricken." *Penn v. State*, 209 S.W.3d 533, 535 n. 1 (Mo.App. E.D.2006).

Moreover, "[a] party is allowed to utilize this provision regardless of how much time elapses before the deficiency is called to his or her attention." *Denny v. State*, 179 S.W.3d 381, 383 (Mo.App. W.D. 2005). Consistent with the lack of a time limit in the Rule, numerous cases have held that an unsigned pleading may be cured under Rule 55.03(a) even after expiration of a time period during which the paper was required to be filed, and even if that time period is otherwise deemed "jurisdictional." *Carter v. State*, 181 S.W.3d 78, 79–80 (Mo. banc 2006) (allowing post-conviction relief movant to cure failure to sign original *pro se* motion after expiration

of time period under Rule 29.15 for the filing of a *pro se* motion, even though, at the time, Rule 29.15's time deadlines were treated as jurisdictional); *Wallingford v. State*, 131 S.W.3d 781, 782 (Mo. banc 2004) (same); *Denny*, 179 S.W.3d 381 (same); *Hensel*, 189 S.W.3d 582 (allowing a party to cure petition ineffectively signed by an out-of-state attorney not admitted to practice in Missouri, even though signing of the petition by a licensed Missouri attorney occurred after the expiration of the applicable limitations period).[4]

As we noted above, although § 473.380.1 requires that a claim against an estate must be signed by the claimant or another knowledgeable person, the statute does not itself specify any consequence if the requirement is not satisfied. *Hensel* explains in an analogous context that Rule 55.03(a) provides the enforcement mechanism for such a signature requirement:

Where in a particular case [an unauthorized person places] the signature on the petition required by Rule 55.03, the sanction of depriving the litigant of a cause of action is disproportionate to the harm. *Where a petition is not signed* or signed by an improper person, *Rule 55.03 provides the sanction*—the petition shall be stricken unless the omission is corrected promptly after being called to the attention of the attorney or party filing same.

189 S.W.3d at 584 (footnote omitted, emphasis added).

Although the trial court correctly observed that the Engels' original claims

---

3. Rule 55.03 was amended effective July 1, 2008; no change was made to the quoted language.

4. We recognize that, in *Glover v. State*, 225 S.W.3d 425 (Mo. banc 2007), the Supreme Court overruled *Wallingford* to the extent *Wallingford* deemed Rule 29.15's time deadlines "jurisdictional." *Id.* at 428. *Glover* also

overruled *Denny* to the extent *Denny* specified a particular procedure for a post-conviction relief movant to cure a signature defect first noted on appeal. *Id.* at 428 n. 3. Despite *Glover*, the discussion of the meaning and operation of Rule 55.03(a) in *Denny* and *Wallingford* retains vitality.

were "not signed by any claimant or by anyone on their behalf who has knowledge of the facts of the alleged claim," under Rule 55.03(a) the question is whether the Engels promptly cured the defect. From reviewing the record, it is apparent that the Engels were not notified of their failure to sign their original claims until the trial court's Judgment Dismissing Claims dated January 30, 2007, which refers to a signature defect apparently first noted by the Conards' counsel at a January 29 hearing. On the day after this Judgment was signed, the Engels filed their verified Amended Claims Against Estate, which supplied the missing signatures. As such, "the omission [was] corrected promptly after being called to the attention of the attorney or party filing same," and the Engels' claims should not have been dismissed on this basis. Rule 55.03(a); *see Hensel,* 189 S.W.3d at 583–84 (failure to sign petition not fatal where "the parties attempted to correct the omission promptly" by filing a properly signed petition "within two months of recognizing the problem").

■ The Conards argue that the Engels were put on notice that their claims were defective by the trial court's July 17, 2006 docket entry, which stated that "[t]his Judge reviews certain filings herein on July 14, 2006 which filings may be construed as claims against the estate—*albeit not in perfect form.*" However this docket entry did not put the Engels on notice that their claims were defective because they were *unsigned.* Rule 55.03(a) states that "the omission" which must be "called to the attention of the attorney or party filing the same" is an "unsigned filing." The July 17, 2006 docket entry did not trigger the Engels' duty to cure under Rule 55.03(a). *Penn v. State,* 209 S.W.3d 533, 535 n. 1 (Mo.App. E.D.2006)("the record must disclose that *the omission of a signature* was called to the attention of the attorney or party to permit its prompt correction before a filing may be stricken" (emphasis added)).[5]

Although not involving Rule 55.03(a) or an unsigned claim, *Estate of Hedrick,* 808 S.W.2d 30 (Mo.App. E.D.1991), excuses the failure to strictly comply with a similar, seemingly mandatory statutory requirement for such probate claims. *Hedrick* interpreted § 473.380.2, which specifies that "[i]f a claim is founded on a written instrument, the original or a copy thereof with all endorsements *shall be attached* to the claim." (Emphasis added.) *Hedrick* held that a claimant's failure to attach a written lease on which its claim was based was not fatal, since "[t]he claim did in fact provide notice to the personal representative of the nature of the claim as evidenced by his demand to see the original copies of the leases before the hearing," and that the trial court "could have allowed the requested amendment to the claim by attaching the leases." 808 S.W.2d at 33.

■ Rule 55.03(a), however, only permits a party to cure *the lack of a signature* on a paper filed in court—the paper must otherwise be adequate. *See Denny,* 179 S.W.3d at 383 (emphasizing that Rule 55.03(a) only gave post-conviction relief movant an opportunity to sign the motion he previously filed; "this is not an opportunity for Mr. Denny to amend his motion in any manner"). Quite apart from the signature defect, the Conards argue that the Engels' original claims "were so deficient that it was impossible to ascertain

---

5. We also consider it significant that, despite a hearing before the court at which all parties were represented, and the filing of a motion to dismiss, the Conards apparently never argued before January 29, 2007 that the Engels' failure to sign the original claims mandated dismissal.

the identity of the claimants," and that "[a] claim that is wholly insufficient to state a claim may not be amended after the limitation period fixed by statute for the filing of claims."

While we acknowledge that the original *pro se* claims the Engels filed were not artfully drafted, we conclude that they were sufficient to notify the Conards of the nature and extent of the Engels' claims and the identity of the claimants, and thus satisfied § 473.380.1's relaxed pleading standard.

> Because the legislature intended to make it easy for nonlawyers to present their claims against estates, a claim filed in probate court is not judged by the strict rules of pleading. Accordingly, a claim is sufficient if it gives reasonable notice to the personal representative of the nature and extent of the claim and is sufficiently specific that a judgment thereon will be res judicata of the obligation upon which the claim is based. Unless a claim is wholly insufficient, it may be amended after expiration of the statute of limitations for filing of claims.

*Hedrick*, 808 S.W.2d at 32 (citing *Bench v. Egan's Estate*, 363 S.W.2d 547, 549 (Mo. 1963)); *accord, Jensen v. Estate of McCall*, 426 S.W.2d 52, 55 (Mo.1968).

We conclude that the Engels' original claims satisfied the essential notice function of such probate pleadings. Each of the claims specified the dollar amount of the claim (which was not altered by successive amendments), and the nature of the obligation allegedly giving rise to the claim: the payment of Earl Conard's funeral expenses; assisting the personal representatives in corralling and feeding Earl Conard's livestock after his passing; and providing various specific agricultural services, during specific time periods, to Earl Conard prior to his death. We believe the nature and extent of the claims was suffi-

ciently described to permit the Conards to investigate and defend against them, and to insure that any judgment on the claims would bar a later attempt to relitigate them. We note that two Eastern District decisions find claims filed by neighboring farmers, alleging that they had performed services for the decedent over a multi-year period, sufficient under § 473.380.1, although the claims appear no more detailed than in this case. *Estate of Holtmeyer v. Piontek*, 913 S.W.2d 352, 355 (Mo.App. E.D.1996) (finding sufficient a claim which "contain[ed] the allegation that appellants had given credit to Francis Holtmeyer in the form of services rendered, and an attachment briefly outlining the nature of the services, the number of years the services were rendered, and what appellants estimate[d] those services to be worth"); *Jones v. Estate of McReynolds*, 762 S.W.2d 854, 855–56 & n. 1 (Mo.App. E.D.1989) (similar).

Further, two of the claims had attachments signed by the Engels, and which identified the particular individual asserting the claim. While the largest claim, for services to Earl Conard prior to his death, only identified the claimant as "Bill," we believe the identity of the claimant was evident in the circumstances: the three claims were filed together and written in the same hand; the clerk was able to docket the claim as filed by William J. Engel, Jr., and informed the Conards' attorney of that fact in the cover letter forwarding the pleading; Mr. Engel requested a hearing on all three claims before the statutory bar date; and at that hearing (also prior to the bar date) the Engels' attorney announced, and the court acknowledged, that the Engels were the claimants on the three claims. For these reasons, and additional reasons described in the footnote, it strains credulity for the

Conards to now claim that it was a "mystery" who filed the original claims.[6]

## IV. Conclusion

The Engels promptly remedied the lack of signatures on their original claims when the omission was brought to their attention. While not models of draftsmanship, their original claims were sufficient to notify the Conards of the nature and extent of the claims and the identity of the claimants, and thus satisfied the informal pleading requirements of § 473.380.1. The Engels' amendment of their original claims after the statutory bar date thus related back to the original filing and was timely, and the Engels' claims should not have been dismissed. The circuit court's Judgment is reversed, and the case remanded for further proceedings consistent with this opinion.

All concur.

[6.] Besides the circumstances surrounding the filing of the Engels' original claims, it is apparent that the Conards, and their counsel, were well aware of the existence of disputes with the Engels over their claims against the Estate. Before the filing of the Engels' original claims, the Conards' original counsel was granted leave to withdraw because he represented the Engels, and disputes had arisen between them and the Estate. Notice of a hearing on the withdrawal motion, and new counsel's entry of appearance, were both served on each of the Engels. Further, after the original Engel claim was filed, on October 18, 2006, Wendall Conard filed a Petition for Discovery of Assets and the Establishment and Imposition of a Constructive Trust against the Engels, claiming that they had wrongfully come into possession of personal property and a bank account owned by Earl Conard. On October 23, Wendall Conard's Petition was consolidated for trial with the Engels' original claims.