

# In the Missouri Court of Appeals
# Eastern District

## SOUTHERN DIVISION

| | | |
|---|---|---|
| JIMMY D. COOK, | ) | No. ED111044 |
| | ) | |
| Appellant, | ) | Appeal from the Circuit Court |
| | ) | of St. Francois County |
| vs. | ) | |
| | ) | Honorable Wendy L. Wexler-Horn |
| PARKLAND HEALTH CENTER, ET AL., | ) | |
| | ) | |
| Defendants, | ) | |
| | ) | |
| and | ) | |
| | ) | |
| DR. LAWRENCE BROWN, ET AL., | ) | |
| | ) | |
| Respondents. | ) | FILED: June 13, 2023 |

### Introduction

Jimmy D. Cook ("Cook") appeals from the circuit court's dismissal of respondents Dr. Lawrence R. Brown ("Dr. Brown") and Dr. Michael Clippard ("Dr. Clippard") from Cook's medical malpractice action. Cook raises six points on appeal. Five points allege the circuit court erred in granting Dr. Brown's motion to dismiss. Points One, Three, and Four assert that a signed affidavit is not required to comply with the merit-certifying requirements of Section 538.225[1] for medical malpractice claims, thus the circuit court erred in dismissing Cook's claim against Dr. Brown on the grounds that Cook failed to file a signed affidavit prior to the running

---

[1] All Section references refer to RSMo (2016), unless otherwise indicated.

of the statute of limitations. Point Two claims that the circuit court erred in dismissing his claim against Dr. Brown because it erroneously denied his request for a nunc pro tunc order to correct the missing signature. In his fifth point, Cook contends that requiring the filing of a signed affidavit under Section 538.225 is unconstitutional as applied to him. In his sixth point, Cook argues that the circuit court erred in dismissing his claim against Dr. Clippard because the claim was for ordinary negligence, not medical malpractice, and therefore, the filing of an affidavit of merit under Section 538.225 was not required.

Because an affidavit must be signed by the affiant to be effective, an affidavit of merit must be signed to comply with Section 538.225. Therefore, we deny Points One, Three, and Four. Because the missing signature was not a clerical error in the circuit court's judgment and a nunc pro tunc order to correct a missing signature cannot modify a judgment already rendered, the circuit court could not grant the relief Cook sought, and we deny Point Two. Similarly, we deny Point Five because requiring a signed affidavit under Section 538.225 is not unconstitutional in that it does not create an unreasonable barrier to the courts or infringe on a medical-malpractice plaintiff's right to a trial by a jury. Finally, because Cook's claim against Dr. Clippard sounded in medical negligence, and because a provider-patient relationship existed and necessitated expert medical testimony, an affidavit of merit was required, and we deny Point Six. Accordingly, we affirm the circuit court's judgment.

<u>Factual and Procedural History</u>

On August 21, 2018, in the emergency room at Parkland Health Center in Farmington, Missouri, Nurse Practitioner Kay Lynn Day ("Day") treated Cook for an eye injury. Cook alleged that the care provided by Day amounted to medical malpractice because she should have immediately referred him to an ophthalmologist. Cook is now completely blind in his left eye. Dr. Brown was the attending emergency room physician on the night Cook was treated. Dr.

2

Clippard was Day's supervisor through a collaborative practice agreement, which allowed Dr. Clippard to delegate certain medical treatments to Day. Neither Dr. Brown nor Dr. Clippard treated Cook.

Cook originally filed suit against Dr. Brown, among other defendants, in August 2020. The circuit court dismissed the petition for failure to file a statutorily compliant affidavit pursuant to Section 538.225.[2] Cook then refiled suit on May 24, 2021, bringing a petition ("Petition") against Dr. Brown and Dr. Clippard, among other defendants. Cook filed a purported affidavit of merit (the "Affidavit") for the claim against Dr. Brown on August 19, 2021.

After the time for filing an affidavit of merit had passed, Dr. Clippard moved to dismiss the Petition's claim against him. Dr. Clippard argued that Cook did not comply with Section 538.225 because he failed to file an affidavit of merit. Dr. Brown also moved to dismiss the Petition's claim against him, arguing that the Affidavit was statutorily noncompliant because it was unsigned. Cook opposed both motions and moved for the circuit court to allow him to file a signed affidavit out of time under Rule 55.03[3] or, alternatively, to enter a nunc pro tunc order accepting the Affidavit corrected with a signature.

The circuit court held a motion hearing on Cook's nunc pro tunc motion and Dr. Brown's and Dr. Clippard's motions to dismiss. At the hearing, Dr. Brown argued that Missouri law clearly requires affidavits to be signed to be effective, and thus the unsigned Affidavit mandates dismissal of Cook's claim against him. Cook maintained that Section 538.225 does not require a signed affidavit and that the Affidavit was otherwise sufficient. Dr. Brown further argued that a

---

[2] Section 538.225 allows for dismissal without prejudice when an affidavit is not compliant. However, because the statute of limitations for medical malpractice claims had run before the motion hearing, this dismissal was effectively a dismissal with prejudice. See Section 516.105.
[3] All Rule references are to Mo. R. Civ. P. (2022), unless otherwise indicated.

nunc pro tunc order was not appropriate because it is intended to correct clerical errors in the record or in judgments, not affidavits.

Regarding Dr. Clippard, Cook argued that he sued for ordinary negligence, not medical malpractice, so an affidavit of merit was not required. In reply, Dr. Clippard argued that the allegations that he failed to train and/or supervise Day and failed to establish appropriate protocols for her treatment of eye injuries sounded in medical malpractice. Dr. Clippard maintained that establishing whether he breached any duty to Cook under those allegations would require expert medical testimony and necessitate an affidavit of merit.

Following the hearing, the circuit court granted both Dr. Brown's and Dr. Clippard's motions and dismissed the Petition's claims against both physicians. The circuit court denied Cook's nunc pro tunc motion to correct the lack of signature on the Affidavit. Cook now appeals.[4]

Points on Appeal

Cook raises six points on appeal. In Points One through Five, respectively, Cook argues the circuit court erred in dismissing the Petition's claim against Dr. Brown for the following reasons: (1) the Affidavit was statutorily compliant because Section 538.225 does not require a signed affidavit; (2) the circuit court erroneously refused to grant Cook's nunc pro tunc motion, which would have corrected the clerical error of no signature; (3) Dr. Brown was not prejudiced by the unsigned Affidavit because it met all written requirements under the statute; (4) the authorities on which Dr. Brown relied in favor of dismissal are either not applicable or no longer

---

[4] The case remains pending against Nurse Practitioner Day, Parkland Health Center, and other defendants. This Court determined that the claims challenging the dismissal of Dr. Clippard and Dr. Brown were final for purposes of appeal because the circuit court dismissed all claims with respect to Dr. Clippard and Dr. Brown and the claims could not be refiled within the statute of limitations. See Rule 74.01(b); Wilson v. City of St. Louis, 600 S.W.3d 763, 769 (Mo. banc 2020).

good law; and (5) requiring a party to follow "unwritten" statutory requirements is unconstitutional because it creates an unreasonable barrier to the courts for medical negligence plaintiffs. In Point Six, Cook argues the circuit court erred in dismissing the Petition's claim against Dr. Clippard because the claim was for ordinary negligence, not medical malpractice, in that it alleged he failed to adequately supervise Day.

## Standard of Review

"Appellate courts review a [circuit] court's grant of a motion to dismiss de novo." Conway v. CitiMortgage, Inc., 438 S.W.3d 410, 413 (Mo. banc 2014) (citing Ward v. W. Cnty. Motor Co., Inc., 403 S.W.3d 82, 84 (Mo. banc 2013)). We review the petition "in an almost academic manner to determine if the plaintiff has alleged facts that meet the elements of a recognized cause of action or of a cause that might be adopted in that case." Id. at 414 (internal citation omitted). "The facts alleged in the petition are assumed to be true and are construed liberally in favor of the plaintiff." Id. (citing Ward, 403 S.W.3d at 84).

Further, the interpretation of Missouri statutes and rules is a question of law that this Court reviews de novo. Kivland v. Columbia Orthopaedic Grp., LLP, 331 S.W.3d 299, 311 (Mo. banc 2011); see State ex rel. Country Mut. Ins. Co. v. May, 620 S.W.3d 96, 99 (Mo. banc 2021) (noting we apply the same standards for interpreting statutes to interpreting rules of civil procedure). Additionally, "[c]hallenges to a statute's constitutional validity are also subject to de novo review." Giudicy v. Mercy Hosps. E. Cmtys., 645 S.W.3d 492, 496 (Mo. banc 2022).

## Discussion

## I.      Point Six—Dr. Clippard

We first address Point Six as the remaining points all pertain to Dr. Brown. Cook argues the circuit court erroneously dismissed Dr. Clippard because the claim against him was for ordinary negligence and not medical malpractice.

5

A.    Analysis—Point Six

"The application of Section 538.225 is not controlled by the manner in which the plaintiff characterizes the claim in the petition." Spears v. Freeman Health Sys., 403 S.W.3d 616, 618 (Mo. App. S.D. 2012).  Instead, "a pleading is judged by its subject and substance of its recitals and not its rubric or caption." Id. at 619 (quoting Devitre v. Orthopedic Ctr. of St. Louis, LLC, 349 S.W.3d 327, 334 (Mo. banc 2011)).  Missouri courts apply a two-part test to determine whether the plaintiff must file an affidavit of merit required by Section 538.225. Devitre, 349 S.W.3d at 331–32.  First, a court must determine whether a healthcare provider-patient relationship existed between the parties. Id.  Second, a court determines whether the "true claim relates only to the provision of health care services." Id. (internal quotation omitted).

Here, the Petition alleges that Dr. Clippard should have properly trained and/or supervised Day regarding her treatment of eye injuries to prevent the allegedly negligent care Cook received.  Cook never filed an affidavit of merit for his claim against Dr. Clippard.  Dr. Clippard argued in his motion to dismiss that Cook's failure to submit a Section 538.225 affidavit was grounds for dismissal.  Cook countered that the claim was for negligent supervision, not medical malpractice, and therefore an affidavit was not required.

This Court is not bound by the language by which Cook couches his claim, as we judge a claim by "its subject and substance of its recitals." Spears, 403 S.W.3d at 618 (quoting Devitre, 349 S.W.3d at 334).  Cook's attempt to separate Dr. Clippard's alleged negligent supervision of Day from the medical setting is unavailing.  Although Dr. Clippard did not personally treat Cook, a healthcare provider-patient relationship exists here giving rise to the duty and claim being made. See Devitre, 349 S.W.3d at 331–32.  Day was only authorized to treat Cook because she entered into a collaborative practice agreement with Dr. Clippard.  The Petition

6

claims that Cook was negligently treated for an eye injury in part because Dr. Clippard did not properly supervise or establish appropriate protocols for Day. Moreover, Cook expressly argues that Dr. Clippard's failure to properly supervise fell below the standard of care for a supervising physician. "If plaintiffs are attempting to prove negligent supervision, expert testimony is an indispensable prerequisite to establishing liability." Dine v. Williams, 830 S.W.2d 453, 456 (Mo. App. W.D. 1992). Accordingly, claims of negligent supervision in a medical setting remain subject to the affidavit requirement. See id. at 456–57 (finding the lack of expert testimony establishing the standard of care for a supervising physician is fatal to a plaintiff's negligent supervision claim in a medical context).

Because both prongs of the test for an affidavit under Section 538.225 are met here, we find an affidavit of merit was required for the claim against Dr. Clippard. See Section 538.225; Devitre, 349 S.W.3d at 331–32. Therefore, the circuit court did not err in dismissing the claim against Dr. Clippard and we deny Point Six. See Conway, 438 S.W.3d at 413 (citing Ward, 403 S.W.3d at 84).

## II.      Points One, Three, and Four—Signature Requirement for Affidavit of Merit

Cook argues that the Affidavit complied with Section 538.225 because the statute does not require an affidavit be signed by the affiant. Because Point One is dispositive of Points Three and Four, we address the points together.

"Absent a statutory definition, words used in statutes are given their plain and ordinary meaning." Balloons Over the Rainbow, Inc. v. Dir. of Revenue, 427 S.W.3d 815, 825 (Mo. banc 2014) (internal quotation omitted). "This Court's primary responsibility in statutory interpretation is to determine the legislative intent from the language of the statute and to give effect to that intent." Id. (internal citation omitted). "When the legislature enacts a statute referring to terms that have had *other judicial or legislative meaning* attached to them, the

7

legislature is presumed to have acted with knowledge of that judicial or legislative action." Id. at

825–26 (emphasis added) (quoting Cook Tractor Co. v. Dir. of Revenue, 187 S.W.3d 870, 873

(Mo. banc 2006)).

As both parties on appeal accurately state, the term "affidavit" is not defined under

Section 538.225, which governs the requirements for filing medical malpractice claims:

> In any action against a health care provider for damages for personal injury or death on account of the rendering of or failure to render health care services, the plaintiff or the plaintiff's attorney shall file **an affidavit** with the court stating that he or she has obtained the written opinion of a legally qualified health care provider which states that the defendant health care provider failed to use such care as a reasonably prudent and careful health care provider would have under similar circumstances and that such failure to use such reasonable care directly caused or directly contributed to cause the damages claimed in the petition.

Section 538.225.1 (emphasis added).

Cook asserts that because Section 538.225 does not define the term "affidavit" we must

apply the rules of statutory interpretation, which he claims supports a finding that the Affidavit

did not need a signature. However, Missouri caselaw clearly holds that the signature of the

affiant is required for an affidavit to be effective. See Land Clearance for Redevelopment Auth.

of City of St. Louis v. Zitko, 386 S.W.2d 69, 78 (Mo. banc 1964). Specifically, the Supreme

Court of Missouri held that "[t]he rule is well established in Missouri that an unsigned affidavit

is no affidavit at all." Id.; see, e.g., Robertson v. Robertson, 192 S.W. 988, 989 (Mo. 1917)

(defining affidavit as "a written statement or declaration, sworn to before some officer authorized

by law to administer oaths, **and signed at the end by the affiant"**) (emphasis added); State ex rel.

Knapp v. Cowan, 88 S.W.2d 424, 425 (Mo. App. W.D. 1935) ("[I]n a divorce proceeding **an**

**unsigned affidavit is no affidavit** even though attested by notary or other proper authority.")

(emphasis added); State v. Hodges, 829 S.W.2d 604, 609 (Mo. App. E.D. 1992) (citing Zitko,

386 S.W.2d at 69; Elsea v. Bass, 77 S.W.2d 164 (Mo. App. K.C. 1934)) ("It has been held that

8

this unusual defect—the acknowledgement of the signature where no signature appears—invalidates affidavits."). Further, the legislature is presumed to have enacted Section 538.225 with the judicial meaning Zitko attached to the word "affidavit" in mind because Section 538.225 was enacted after Zitko. See Section 538.225; Balloons Over the Rainbow, 427 S.W.3d at 825–26 (quoting Cook Tractor, 187 S.W.3d at 873).

Cook identifies no Missouri jurisprudence allowing us to deviate from the clearly stated requirement that an affidavit must contain the signature of the affiant. See Zitko, 386 S.W.2d at 69. Until the Supreme Court elects to deviate from its definition of an affidavit set forth in Zitko, litigants filing medical malpractice cases must strictly adhere to the requirements of Section 538.225 and file a fully signed and executed affidavit within the time set by the statute. "This Court is bound by Article V, section 2 of the Missouri Constitution to follow controlling decisions of the Missouri Supreme Court, . . . and thus, regardless of our inclination, we do not have the authority to modify the current state of the law." Dorsey v. JPAM Consulting, Inc., 644 S.W.3d 297, 302 (Mo. App. E.D. 2022) (internal citation omitted). We must follow the precedent in Zitko and thus hold that a signature of the affiant is required for an affidavit to comply with Section 538.225, otherwise it "is no affidavit at all." See Zitko, 386 S.W.2d at 69. Because the Affidavit lacked a signature, Cook failed to comply with Section 538.225, and the circuit court was statutorily required to dismiss the claims against Dr. Brown. See Section 538.225.

In his third point, Cook argues that his Affidavit substantially complied with Section 538.225 despite missing the signature. In support, Cook relies on Mayes v. St Luke's Hosp. of Kansas City, 430 S.W.3d 260 (Mo. banc 2014) and Ferder v. Scott, 556 S.W.3d 100 (Mo. App. E.D. 2018). Mayes and Ferder both considered but ultimately rejected arguments in favor of

9

substantial compliance with Section 538.225 as applied to the particular facts of those cases.  See Mayes, 430 S.W.3d at 271–72; Ferder, 556 S.W.3d at 103.  Critically, neither case stands for the proposition that an unsigned affidavit substantially complies with Section 538.225.  Both Mayes and Ferder address *signed affidavits* that did not otherwise wholly comply with other requirements of Section 538.225.  That is not what happened here.  Without a signature, the Affidavit was wholly ineffective.  See Zitko, 386 S.W.2d at 69.

In his fourth point, Cook suggests that we should no longer follow Zitko.  Cook misguidedly relies on Sharp for his assertion that an inadvertently unsigned affidavit is valid and effective if the affidavit accomplishes the purpose intended.  See City of Lake Winnebago v. Sharp, 652 S.W.2d 118, 123 (Mo. banc 1983).  In Sharp, the Supreme Court allowed signatures to be added retrospectively to unsigned affidavits filed with applications for a trial de novo following municipal convictions.  Id.  Importantly, the Supreme Court based its ruling upon the fact that neither the applicable rule nor statute *required the filing of an affidavit* to petition for a trial de novo from a municipal violation.  See id.  In contrast, Missouri expressly requires an affidavit of merit for medical malpractice claims.  See Section 538.225; Mayes, 430 S.W.3d at 271–72 ("The legislature intended the requirement that a plaintiff file an affidavit with the court be mandatory.").  Thus, an unsigned affidavit of merit does not accomplish the intended purpose of Section 538.225.  See Sharp, 652 S.W.2d at 123.  Importantly, the Supreme Court in Sharp unambiguously stated that its opinion did not undermine the prior Zitko holding.  See Sharp, 652 S.W.2d at 123 ("We do not believe that the cited cases demonstrate actual conflict.  [Hargadine and Zitko] simply hold that an unsigned affidavit is not an affidavit.  *We do not disagree*, but the question here is whether a late signing might suffice.") (emphasis added).  Sharp plainly does not overrule Zitko, so we must abide by its holding.  See id.

In summary, an affidavit of merit must be signed to comply with Section 538.225. <u>See</u> Section 538.225; <u>Zitko</u>, 386 S.W.2d at 69. Because the Affidavit was not signed, the circuit court correctly dismissed the claims against Dr. Brown. <u>See</u> <u>Conway</u>, 438 S.W.3d at 413 (citing <u>Ward</u>, 403 S.W.3d at 84); <u>Kivland</u>, 331 S.W.3d at 311. Further, we are not persuaded by Cook's arguments in Points Three and Four. Accordingly, we deny Points One, Three, and Four.

### III. Point Two—Nunc Pro Tunc

Cook next argues the circuit court erred in granting the motions to dismiss because it should have granted his nunc pro tunc motion to remedy the lack of a signature on the Affidavit under both Rule 74.06(a) and Rule 55.03(a).

Preliminarily, we note that Cook confusingly conflates his request for nunc pro tunc relief under two different procedural rules: Rule 74.06(a) and Rule 55.03(a). Cook preserved both arguments by mentioning both rules in his nunc pro tunc motion. However, whether the circuit court erred by not issuing a nunc pro tunc order under Rule 74.06(a) to reflect that the Affidavit was signed or by permitting him under Rule 55.03(a) to correct the Affidavit's lack of signature presents two entirely distinct legal claims. "Points on appeal that raise multiple, independent claims of error are multifarious" and "are noncompliant with Rule 84.04(d) and preserve nothing for review." <u>Dieckmann v. JH Constr. 2, LLC</u>, 619 S.W.3d 513, 522 (Mo. App. E.D. 2021) (internal quotations omitted). The fact that Cook's two claims are governed by two different rules is telling. When a point relied on is impermissibly multifarious, as Point Three is here, we may choose to address only one part of a claim or dismiss the point entirely "so that we do not improperly advocate for a party, waste judicial resources, or misinterpret what a party was arguing." <u>Id.</u> (internal quotation omitted). "We may, however, in our discretion, review multifarious points ex gratia." <u>City of Joplin v. Wallace Bajjali Dev. Partners, L.P.</u>, 522 S.W.3d 327, 331 (Mo. App. S.D. 2017) (internal citation omitted). Because Cook raised both procedural

11

rules before the circuit court, and because we prefer to address his claims on their merits, we exercise our discretion to discuss not only his nunc pro tunc claim but also his separate Rule 55.03(a) claim.

Rule 74.06(a) codified the common law doctrine of nunc pro tunc. Generally, a nunc pro tunc order is used to correct "clerical mistakes in judgments, orders, or other parts of the record and errors therein arising from oversight or omission." Wilson v. Lilleston, 290 S.W.3d 795, 799 (Mo. App. W.D. 2009) (quoting Rule 74.06(a)).

The question presented here is whether a circuit court may grant a nunc pro tunc order to allow a late signing of an affidavit of merit under Section 538.225. "[T]he power to issue nunc pro tunc orders, however, constitutes no more than the power to make the record conform to the judgment already rendered; it cannot change the judgment itself." Pirtle v. Cook, 956 S.W.2d 235, 240 (Mo. banc 1997). "Nunc pro tunc judgments can only be used to make corrections that were omitted from the judgment but 'were actually done' and evidenced in the record." DiSalvo Props., LLC v. Purvis, 498 S.W.3d 530, 533 (Mo. App. E.D. 2016) (citing McGuire v. Kenoma, LLC, 447 S.W.3d 659, 664 (Mo. banc 2014)).

Cook submitted the Affidavit without a signature and then sought to add the missing signature through a nunc pro tunc order. Had the circuit court allowed same, it would have *substantively* changed its judgment dismissing his claim against Dr. Brown for failure to submit an affidavit of merit in compliance with Section 538.225. Had the Affidavit been signed, the claim against Dr. Brown would have proceeded. Changing the record to reflect that the Affidavit was signed would necessarily change the judgment of dismissal, which was already rendered. See id. This scenario is precisely the type of relief that a nunc pro tunc order cannot grant. See id. The affiant's missing signature was not a clerical error in the circuit court's judgment or any

12

other part of the record. See Rule 74.06(a). The record reflects that the Affidavit was not signed and a nunc pro tunc motion cannot "correct" a judgment to reflect something that is not already in the record. See Rule 74.06(a); Purvis, 498 S.W.3d at 533 (citing McGuire, 447 S.W.3d at 664). Thus, the circuit court properly denied Cook's nunc pro tunc motion. See Conway, 438 S.W.3d at 413; Purvis, 498 S.W.3d at 533 (citing McGuire, 447 S.W.3d at 664); see also Wilson, 290 S.W.3d at 799 (quoting Rule 74.06(a)).

Cook alternatively argues that the circuit court erred in dismissing his claims because he should have been permitted to retroactively sign the Affidavit under Rule 55.03(a). As stated above, we exercise our discretion to address this separate claim.

Rule 55.03(a) provides that "[e]very pleading, motion, and other filing shall be signed by at least one attorney of record in the attorney's individual name or by the self-represented party." "An unsigned filing or an electronic filing without the required certification shall be stricken unless the omission is corrected promptly after being called to the attention of the attorney or party filing same." Rule 55.03(a).

Cook identifies "numerous cases [that] have held that an unsigned pleading [or other filing] may be cured under Rule 55.03(a) even after expiration of a time period during which the paper was required to be filed." Conard v. Engel, 272 S.W.3d 313, 318 (Mo. App. W.D. 2008). However, Rule 55.03(a) cannot salvage or otherwise rescue the non-filing of a statutorily required affidavit of merit under Section 538.225.

Rule 55.03 contemplates signatures that are intended to certify that the filing "is well grounded in fact and is warranted by existing law" and "not for any 'improper purpose [including] needless increase in the cost of litigation.'" Mahoney v. Doerhoff Surgical Servs., Inc., 807 S.W.2d 503, 508 (Mo. banc 1991). While the affidavit procedure under Section

13

538.225 is intended to serve a similar purpose, the signatures contemplated by Rule 55.03 do not give the filings their legal effect. See id. For example, an attorney's signature does not make a petition a petition nor a motion a motion. See Conard, 272 S.W.3d at 318 (citing Hensel v. Am. Air Network, Inc., 189 S.W.3d 582, 583 (Mo. banc 2006)) (noting lack of compliance with Rule 55.03(a) "is not necessarily fatal to the filing of a petition."). Lack of a signature, however, is fatal to a document tendered as an affidavit, regardless of whether the document meets the other requirements necessary for it to be properly filed with the court. See Zitko, 386 S.W.2d at 69. Quite simply, the Affidavit in the record lacks the required signature which would make it effective and statutorily compliant. See Section 538.225; Zitko, 386 S.W.2d at 69. Although Rule 55.03 generally allows an attorney to correct a missing signature that certifies a filing, the rule does not supersede the signature requirement for affidavits set forth in Zitko and Section 538.225.

Furthermore, legislative revisions to Section 538.225 confirm our strict adherence to the affidavit filing mandate of the statute. In 2005, Section 538.225 was amended to require mandatory dismissal for the failure to file the requisite affidavit. The statute previously allowed a court the discretion to dismiss the action if the plaintiff failed to file the affidavit of merit. See Section 538.225 (2000); Mayes, 430 S.W.3d at 271. "The statutory language, both in terms of directing a plaintiff to file an affidavit and directing the court to dismiss the action if an affidavit is not filed, demonstrates that the legislature intended the requirement that a plaintiff file an affidavit with the court be mandatory." Mayes, 430 S.W.3d at 271–72. Were any court to allow the signature to be added after the time proscribed by statute to file an affidavit—and, in this case, after the time in which to file the claim under Section 516.105—has passed, such action would directly conflict with the legislature's clearly stated intent. See id. Section 538.225 does

14

not allow the relief Cook seeks.  See Section 538.225; Mayes, 430 S.W.3d at 271–72.  We deny Point Two.[5]

## IV.    Point Five—Constitutionality of Section 538.225

In his fifth point, Cook argues that requiring a signed affidavit under Section 538.225 is unconstitutional as applied to him because it creates an unreasonable barrier to the courts and denies medical-negligence plaintiffs their right to a trial by jury.

As discussed in Point One, an affidavit must be signed to comply with the mandatory-affidavit provision of Section 538.225.  Our Supreme Court has already held that Section 538.225 is constitutional with respect to both Article I, Sections 14 and 22(a).  See Mahoney, 807 S.W.2d at 509.

In support of his argument that Section 538.225 creates an unreasonable barrier to the courts, Cook relies on State ex rel. Cardinal Glennon Mem'l Hosp. for Child. v. Gaertner, 583 S.W.2d 107 (Mo. banc 1979).  That case did not address the issue of affidavits of merit.  Rather, the Court held a statutory provision subjecting medical malpractice claims to compulsory non-binding arbitration to be unconstitutional.  See id.  The Court in Mahoney addressed the exact same argument Cook now posits.  The plaintiffs in Mahoney similarly argued that the reasoning in Cardinal Glennon should extend to render unconstitutional Section 538.225's affidavit procedure.  However, the Court held that "the concerns of Cardinal Glennon over the disadvantages to a plaintiff from a delayed suit do not apply to Section 538.225.  The plaintiffs were not denied access to the courts in the constitutional sense by [Section 538.225's affidavit] procedure."  Mahoney, 807 S.W.2d at 509.  The Court also expressly found that the affidavit procedure "denies no fundamental right, but at most merely '[re]design[s] the framework of the

---

[5] We deny Cook's nunc pro tunc motion taken with the appeal.

15

substantive law' to accomplish a rational legislative end." Id. at 510. Further, "[t]he 'screening' procedure of Section 538.225 and the dismissal without prejudice that culminates a noncompliance are less onerous to the right to trial by jury than a directed verdict or a summary judgment, neither of which are infringements of that constitutional guarantee." Id. at 508. Importantly, the Court held that "Section 538.225 does not violate Article I, [Section] 22(a) of the Missouri Constitution." Id. at 508.

Cook raises no constitutionality claims unresolved by Mahoney. Further, Cook offers nothing in the record that would prompt a deviation from the precedent set forth in Mahoney. Therefore, because Cook's constitutionality arguments fail, the circuit court did not err in dismissing his claims against the physicians, and we deny Point Five. See id. at 508–10; Giudicy, 645 S.W.3d at 496.

Conclusion

The judgment of the circuit court is affirmed.

_____
KURT S. ODENWALD, Judge

Michael E. Gardner, C.J., concurs.
Thomas C. Clark II, J., concurs.

16