

# SUPREME COURT OF MISSOURI
## en banc

NAYLOR SENIOR CITIZENS HOUSING, )
LP, ET AL., )
                                             )
                        Appellants, )
                                               )
AND )
JOHN DILKS, )
                         Plaintiff, )
                                                 )
                  v.                            )           No. SC93404
                                                 )
SIDES CONSTRUCTION COMPANY, INC., )
ET AL., )
                                               )
                       Respondents. )
                                               )

### APPEAL FROM THE CIRCUIT COURT OF RIPLEY COUNTY
The Honorable Michael Ligons, Judge

*Opinion issued February 25, 2014*

On September 21, 2011, John Dilks filed a *pro se* petition (the "Original Petition") to recover damages he suffered as a result of a flood on September 22, 2006. Those claims (since amended) are not involved in this appeal. Instead, this appeal concerns only the claims that Dilks also attempted to assert in the Original Petition on behalf of Naylor Senior Citizens Housing, LP and Naylor Senior Citizens Housing II, LP (collectively, the "Partnerships"). As statutory entities, the Partnerships may not appear in Missouri courts except through a licensed attorney. Because Dilks is not a licensed

attorney, his attempt to assert claims on behalf of the Partnerships constitutes the unauthorized practice of law and may not be given effect. Accordingly, the trial court dismissed the Original Petition to the extent it purports to assert claims on behalf of the Partnerships. That judgment is affirmed.

## I.    *Background*

Dilks was the only person to sign the Original Petition. It alleges a single count and concludes with this prayer: "Plaintiffs request judgment against Defendants, jointly and severally, for damages" relating to stormwater flooding that occurred on September 22, 2006. The "Plaintiffs" identified in the allegations of the Original Petition are Dilks, individually, and the Partnerships, both of which are Missouri statutory limited partnerships.

On October 29, 2011, Defendant Schulz Engineering Services, Inc. ("Schulz"), sought to dismiss Dilks' own claims in the Original Petition on the ground that he lacked standing to sue for damage suffered by the Partnerships. Schulz also moved to dismiss the claims that Dilks attempted to assert on behalf of the Partnerships because the Partnerships cannot represent themselves and Dilks cannot represent them because he is not a licensed attorney. Ultimately, all defendants asserted similar motions and arguments.

Nearly seven weeks passed before Dilks or the Partnerships offered any response to these motions. When plaintiffs finally responded on December 21, 2011, they did so through a licensed attorney. Plaintiffs' counsel, however, did not file or seek leave to file – at this time or any other – a "corrected" signature page for the Original Petition

pursuant to Rule 55.03(a).  Instead, plaintiffs' counsel filed a "Reply to Motions to

Dismiss," supported by an affidavit from Dilks.[1]

This reply contends that the defendants' motions to dismiss the Partnerships'

claims should be denied – not because Rule 55.03(a) allows their counsel to correct the

Original Petition's defect – but because the Original Petition is effective regardless of

Dilks' improper conduct in signing and filing it on behalf of the Partnerships.  The reply

argues, therefore, that the Partnerships should be given "a reasonable time to file an

amended petition, provided it is signed by a licensed Missouri attorney."  Finally, the

reply contends that Dilks has standing to assert his own claims because his damages are

separate and distinct from the Partnerships' damages.

---

[1]   In this affidavit, Dilks states that he believed (or had been told) that claims for flood damages were governed by a five-year statute of limitations.  Therefore, he states that he began working with a lawyer to prepare the Partnerships' claim at least three months prior to the end of that period.  On the day before the five-year period was to expire, however, this lawyer told Dilks that neither the lawyer nor his firm could represent Dilks or the Partnerships due to a conflict of interest.  However, the lawyer told Dilks that – because the five-year period was about to expire – he had drafted a petition for Dilks to sign and file.  On September 21, 2011, therefore, Dilks admits that he signed and filed the Original Petition asserting both his own claims and claims on behalf of the Partnerships.  Consideration of Dilks' affidavit is improper, however, because neither the trial court nor the appellate court on *de novo* review may consider matters outside the pleadings when adjudging a motion to dismiss.  *City of Lake Saint Louis v. City of O'Fallon*, 324 S.W.3d 756, 759 (Mo. banc 2010).  Such materials may be considered only if the trial court converts the motion to one for summary judgment and provides notice that it is doing so.  *See* Rule 55.27(a).  If the trial court gives no such notice and the judgment expressly grants the motion to dismiss, this is an affirmative statement that the trial court did not convert the motion and, more importantly, that it did not consider matters outside the pleadings.  *Hoover v. Mercy Health*, 408 S.W.3d 140, 142 (Mo. banc 2013).  Appellate courts are bound by such statements and, as a result, cannot consider extraneous submissions or review decisions the trial court did not make.  *Id.*  Here, the trial court gave no notice of conversion, and the judgment grants the motions to dismiss as such.  Accordingly, Dilks' affidavit is not properly before the Court.  In any event, the relevant facts of this appeal are admitted, and justifications or explanations cannot change the legal effect of those facts.

On January 20, 2012, the same day that the motions to dismiss were argued and submitted, plaintiffs' counsel filed a motion titled: "Motion for Leave to File First Amended Petition and Proposed First Amended Petition." The proposed amended petition (attached to this motion as an exhibit) does not simply substitute counsel's signature for Dilks' signature on the Original Petition. Instead, the proposed amended petition seeks to add new factual allegations and new legal theories and tries to divide the Original Petition's single count into two separate counts: one on behalf of Dilks, and the other on behalf of the Partnerships. The trial court never ruled on this motion, however, and the Partnerships concede they seek no relief in this appeal with respect to that motion.

On March 7, 2012, the trial court dismissed the Partnerships' claims on the ground that – because Dilks was not a licensed attorney and he attempted to assert claims in the Original Petition on behalf of the Partnerships – the Original Petition was "a nullity" and "had no legal effect from the date of filing" for purposes of asserting claims on behalf of the Partnerships. The Original Petition plainly was effective for the purpose of asserting Dilks' personal claims, however. Accordingly, the trial court declined to dismiss those claims but ordered Dilks to file an amended petition making his claims more definite and certain.

On March 26, 2012, Dilks' counsel signed and filed a pleading titled "First Amended Petition" (the "Amended Petition"). This pleading is not the proposed amended petition that counsel sought leave to file in January 2012, and the Amended Petition does not even purport to assert claims on behalf of the Partnerships. Instead, it

4

contains no allegations identifying the Partnerships as plaintiffs, it ends with a prayer seeking only damages on behalf of Dilks, and – as if to remove any doubt – the customary recital at the beginning of the Amended Petition begins: "Comes now Plaintiff John Dilks, and for his cause of action against Defendants states …."[2]

On March 30, 2012, counsel filed a motion on behalf of the Partnerships requesting that the trial court reconsider its March 7 order dismissing the Partnerships' claims in the Original Petition or, in the alternative, to denominate that order as a judgment pursuant to Rule 74.01(a) and certify it for immediate appeal pursuant to Rule 74.01(b). The trial court overruled the motion to reconsider but, on May 2, 2012, restated the March 7 order in the form of a "partial judgment" and made the findings required for immediate appeal.

Because this judgment dismisses the Original Petition only insofar as it purports to assert claims on behalf of the Partnerships and does not dismiss Dilks' personal claims (now asserted in the Amended Petition), only the Partnerships appeal from this judgment. They seek to have the dismissal vacated and their claims remanded for further proceedings. This Court has jurisdiction of the appeal, *see* Mo. Const. art. V, § 10, and the trial court's judgment is affirmed.

---

[2] The caption on the Amended Petition does refer to the Partnerships, but "parties to a cause of action are determined by reference to the body of the petition, not the caption." *McBee v. Gustaaf Vandecnocke Revocable Trust*, 986 S.W.2d 170, 172 (Mo. banc 1999).

## II. Analysis

### A. Final and Appealable Judgment

The trial court's judgment dismissing the Partnerships' claims is silent as to whether that dismissal was with or without prejudice. Under Rule 67.03, therefore, the dismissal is assumed to be without prejudice. This raises a question of whether the judgment is final and appealable, however, because this Court occasionally has referred to a "general rule that a dismissal without prejudice is not a final judgment and, therefore, is not appealable." *Chromalloy Am. Corp. v. Elyria Foundry Co.*, 955 S.W.2d 1, 3 (Mo. banc 1997).

It is unclear to what extent, if any, this "general rule" ever was followed. Over time, however, exceptions seemed to have swallowed all or nearly all of whatever rule once might have existed. For example, in *Chromalloy*, this Court held that a dismissal without prejudice may be appealed if – but only to the extent that – the dismissal decides some issue with preclusive effect. *Id.* Here, the trial court's judgment states that the Original Petition was not effective for the purpose of asserting claims on behalf of the Partnerships. That judgment has preclusive effect in the sense that no subsequent action by the Partnerships can correct the defect noted in the judgment or render the Original Petition effective for that purpose. Accordingly, the Partnerships are entitled to appellate review of this judgment. *Id.* (recognizing exception to the "general rule" where the "dismissal has the practical effect of terminating the litigation *in the form cast*") (emphasis added).

6

### B. Limited Partnerships May Appear and Assert Claims Only By and Through a Licensed Attorney

A natural person ordinarily is entitled to appear and assert claims on his own behalf in Missouri's courts, but a corporation may appear only through an attorney licensed or admitted to practice here by this Court.

> A corporation is not a natural person. It is an artificial entity created by law. Being an artificial entity it cannot appear or act in person. It must act in all its affairs through agents or representatives. ***In legal matters, it must act, if at all, through licensed attorneys***.

*Clark v. Austin*, 101 S.W.2d 977, 982 (Mo. banc 1937) (emphasis added). This view is shared almost universally. *See, e.g.*, *Rowland v. California Men's Colony, Unit II Men's Advisory Council*, 506 U.S. 194, 201-02 (1993) ("It has been the law for the better part of two centuries, for example, that a corporation may appear in the federal courts only through licensed counsel."); 19 Am. Jur. 2d Corporations § 1874 (citing *Osborn v. Bank of U.S.*, 22 U.S. 738, 830, (1824) (Marshall, C.J.) ("A corporation, it is true, can appear only by attorney, while a natural person may appear for himself.")).

Limited partnerships, like corporations, are not natural persons. They exist solely because of – and only to the extent they comply with – the provisions of chapter 359 of the Revised Statutes of Missouri, titled "Uniform Limited Partnership Law." *See, e.g.*, § 359.091.1, RSMo 2000 ("to form a limited partnership, a certificate of limited partnership shall be executed and filed in the office of the secretary of state"). The Partnerships suggest no principled basis for distinguishing between corporations and other statutory entities for this purpose, and this Court finds none. Accordingly, the

7

Court holds that limited partnerships, as statutory entities, may appear in the courts of this state only through an attorney licensed or admitted to practice here by this Court.[3]

### 1. Statutory Entities Cannot Appear on their Own Behalf

The extension of this rule to limited partnerships highlights that the rule actually is an amalgam of two entirely separate – but seldom separated – concepts, one factual and the other legal. First, statutory entities cannot act except through individuals acting on their behalf. This premise is not a pronouncement of law or policy; it is an acknowledgment of indisputable fact. *Schneider v. Schneider*, 146 S.W.2d 584, 589 (Mo. 1940) ("A corporation, being an artificial person created by operation of law, can act only through its officers, directors and agents.") Therefore, the Court is not withholding *permission* for statutory entities to appear in court on their own behalf. Instead, the Court is acknowledging that it simply is not possible for a "legal fiction" to be anywhere or do anything – including, but not limited to, appearing in court – unless some individual does so on its behalf. *Commodity Futures Trading Comm'n v. Weintraub*, 471 U.S. 343, 348 (1985) ("As an inanimate entity, a corporation must act through agents.").

---

[3] Limited partnerships are fundamentally different than general partnerships for purposes of this analysis. Under Missouri law, a general partnership "has no legal existence apart from its members." *Haney v. Thompson*, 98 S.W.2d 639, 644 (Mo. banc 1936). This view was codified in the Uniform Partnership Act. *Kelley v. DeKalb Energy Co.,* 865 S.W.2d 670, 671 (Mo. banc 1993) ("Under Missouri's version of the Uniform Partnership Act, a partnership is not a legal entity separate from the individual partners."). For that reason, a general partnership "cannot sue or be sued in the firm name, and that a judgment rendered for or against the partnership will be reversed on appeal." *Haney*, 98 S.W.2d at 644. A statutory limited partnership, on the other hand, is a separate legal entity from its partners and, therefore, can sue or be sued in its own name. § 359.081.

It is this basic fact that distinguishes statutory entities and natural persons for purposes of this rule. Dilks was not representing anyone or anything when he asserted his own claims by signing and filing the Original Petition. He was appearing and asserting those claims "for himself," which is the literal meaning of the phrase "*pro se*." Whether the Court should allow natural persons to appear for themselves is the sort of legal or policy decision addressed below. For purposes of this first determination, however, what matters is that a natural person physically is able to appear on his own behalf and a statutory entity physically is not.[4] *See* Annotation: *Propriety and Effect of Corporation's Appearance Pro Se Through an Agent Who is Not an Attorney*, 8 A.L.R.5th 653 (1992) ("corporation, regarded by the law as an artificial entity, obviously cannot appear on its own behalf, and thus it must appear through an agent").

### 2. Individuals Representing Statutory Entities Must be Licensed Attorneys

Having first determined, as a practical matter, that statutory entities cannot appear anywhere unless some individual appears on their behalf, the second aspect of this rule is the legal or policy decision as to whether this individual must be a licensed attorney. The first concept is an indisputable, unavoidable fact; this second concept, though a matter of policy, is just as certain and just as unavoidable.

The question of who should be allowed to act on behalf of the statutory entity and under what circumstances ordinarily is a question for the legislature, which often will set

---

[4] Regarding Oakland, California, it is said: "There is no there there." Stein*, Everybody's Autobiography*, at 289 (Random House 1937). So, too, it might be said of a statutory entity: "It has no it in it."

certain boundaries but leave some discretion to the entity. *See, e.g.*, § 351.310, RSMo 2000 (corporation "shall be controlled and managed by a board of directors" but qualifications of directors may be prescribed in the articles of incorporation, or in the bylaws); § 359.251, RSMo 2000 ("Except as provided in this chapter or in the partnership agreement, a general partner of a limited partnership has the rights and powers and is subject to the restrictions of a partner in a partnership without limited partners.").

When the question is who may be allowed to appear on behalf of a statutory entity in Missouri's courts, however, this Court – and only this Court – must supply the answer because it is the "sole arbiter of what constitutes the practice of law." *Hulse v. Criger,* 247 S.W.2d 855, 857 (Mo. banc 1952).

A precise and comprehensive definition of the practice of law has proved elusive over the last two centuries. *See, e.g., Clark*, 101 S.W.2d at 982 (it is "difficult to give an all-inclusive definition of the practice of law, and we will not attempt to do so"). Fortunately, this case does not require the Court to divine a complete and exhaustive definition either. This is because – no matter what else may or may not be included in such a definition – the act of appearing in court to assert or defend claims on behalf of another lies at the very heart of the practice of law. *See* § 484.010.1, RSMo 2000 (the practice of law includes the "appearance as an advocate in a representative capacity ... in connection with proceedings pending or prospective before any court of record").[5]

---

[5] Even though this Court is the "sole arbiter" of what constitutes the practice of law, it "has used these statutory definitions … as a reference point for determining the scope of the practice of law." *Hargis v. JLB Corp.*, 357 S.W.3d 574, 578 (Mo. banc 2011).

10

As noted above, this Court permits most individuals to act for themselves in Missouri's courts but requires statutory entities to be represented by licensed attorneys. This disparity seems unfair to some because many of the justifications for requiring statutory entities to be represented by licensed attorneys (e.g., attorneys are trained to provide quality representation and are subject to ethical rules and professional standards) also could be used to justify a prohibition against self-representation by natural persons. This argument misses the critical distinction. When an individual appears *pro se*, i.e., for himself, that person is not engaging in the practice of law because he is not representing ***another*** in court.[6]

On the other hand, because a statutory entity cannot do anything "for itself," the ***only*** way it can appear in court is to have an individual appear on its behalf. That individual, by definition, is "representing another" in court and, therefore, necessarily is engaging in the practice of law. Once this is understood, the requirement that a statutory

---

[6]    Of course, not all individuals are allowed to appear for themselves (e.g., minors, incompetent or incapacitated individuals, etc.), and the Court could require all individuals to be represented even though their *pro se* appearances do not constitute the practice of law. One reason the Court historically has allowed this practice, however, is that when a natural person decides to appear for himself in court, both the responsibility for and consequences of that decision belong to the same person. The choice to forego legal representation is made by the same individual who will be present in court to make the myriad of decisions that arise in litigation, and the consequences of these decisions will fall directly on the one who made them. But no such confluence of cause and effect can exist with a statutory entity. As noted above, the decision to forego legal representation is made ***for*** – not ***by*** – a statutory entity, and the consequences of that choice likely will affect more than just the one (or ones) who made it. Finally, because the person chosen to appear on behalf of the entity in court likely will not be the one (or even among those) who decided to forego legal counsel for the entity, that person will not necessarily know what those "decision makers" want done on behalf of the entity when decisions must be made in the courtroom. *See, e.g., Commodity Futures Trading Comm'n v. Weintraub*, 471 U.S. 343, 348-49 (1985) ("A corporation cannot speak directly to its lawyers. Similarly, it cannot directly waive

entity's representative be a licensed attorney is inescapable, because this Court restricts the practice of law solely to attorneys licensed or admitted to practice by this Court. *De Pass v. B. Harris Wool Co.*, 144 S.W.2d 146, 148 (Mo. banc 1940) ("Missouri has adopted a policy that the practice of law and the doing of law business, both in and out of its courts, shall be limited to persons with special qualifications and duly licensed as attorneys"); *Hulse,* 247 S.W.2d at 857-58 ("The practice of law in Missouri, as in other states, long has been restricted solely to licensed attorneys so as to 'protect the public from being advised or represented in legal matters by incompetent or unreliable persons.'").

Accordingly, the Court holds that limited partnerships – as statutory entities – may appear in Missouri courts only through a licensed attorney. Dilks, who is not a licensed attorney, had no more authority to sign and file pleadings on behalf of the Partnerships than he did for his next door neighbor. His attempt to assert claims on behalf of the Partnerships by signing the Original Petition constituted the unauthorized practice of law.

### C. Dismissal was Proper Because Actions Constituting the Unauthorized Practice of Law are Not to be Given Effect

The Partnerships mount only token resistance to the foregoing holding that limited partnerships – like other statutory entities – may appear in Missouri's courts only through an attorney licensed or admitted to practice by this Court. Instead, the Partnerships' main line of resistance is that Dilks' unauthorized practice of law should be treated – at least

---

the privilege when disclosure is in its best interest. Each of these actions must necessarily be undertaken by individuals empowered to act on behalf of the corporation.").

12

for a while – as though it *was* authorized. Specifically, the Partnerships contend that "the

nullity rule has been or should be abolished" and, therefore, the trial court erred by not

giving "the party who failed to properly sign the pleading an attempt [sic] to correct the

omission." In other words, the Partnerships ask this Court to hold that the trial court

erred: (1) by refusing to treat the Original Petition, which was signed by Dilks, as though

it had been filed by an attorney who forgot to sign it; and (2) by refusing to treat the

motions to dismiss merely as the means by which defendants called this "omitted

signature" to the Partnerships' attention and thereby triggered the Partnerships' right

under Rule 55.03 to correct that omission.[7] The Court finds no such errors.

### 1.   *Acts Constituting the Unauthorized Practice Of Law Must Not be Given Effect*

The acts of someone engaged in the unauthorized practice of law may not be given

effect as though the practice was authorized. Such acts may draw sanctions in the form

of *quo warranto* proceedings, contempt citations, or criminal charges. *Hulse,* 247

S.W.2d at 856; *Clark*, 101 S.W.2d at 993. But regardless of whether any of these

sanctions (or others) is appropriate in a given case, the Court holds now – as it has in the

past – that actions constituting the unauthorized practice of law must not be recognized or

given effect. *Reed v. Labor & Indus. Relations Comm'n*, 789 S.W.2d 19, 23 (Mo. banc

---

[7]   As discussed below, the Partnerships' arguments contradict established precedent that serve an important purpose. It is worth noting, however, that these arguments also contradict reality. Dilks is not a lawyer, and he did not forget to sign the Original Petition. He signed it, in part, in an attempt to assert claims he was not authorized to assert. In addition, the motions to dismiss were not simply reminders to Dilks that he forgot to sign the petition. They timely requested that Partnerships' claims be dismissed because Dilks' attempt to assert them in the Original Petition was not – and never could have been – effective.

13

1990) ("Any such filings by a lay person on behalf of a corporate employer will be considered untimely filed and null and void.").

To take any other position would be to say that the unauthorized practice of law is not really wrong, merely less preferred than authorized practice; or that laypersons may represent others (including statutory entities) in court, but only for a limited time. The Court will not send such mixed signals by substituting the fairness and predictability of this bright-line rule with a situational ethic based upon a *post hoc* weighing of circumstances and balancing of harms.

The Court determined long ago that the practice of law by unlicensed individuals is wrong; wrong for the courts, wrong for clients, and wrong for society.

> This court believes that it has the responsibility and the duty to concern itself both with regard to proper conduct of licensed practitioners and with unlawful practice of law by all others to the end that legal services required by the public, and essential to the administration of justice, will be rendered by those who have been found by investigation to be properly prepared to do so by conforming to strict educational standards, and who demonstrate that they have the character to conform to higher standards of ethical conduct than are ordinarily considered necessary in business relations which do not involve the same fiduciary and confidential relationships.

*Curry v. Dahlberg*, 112 S.W.2d 345, 345-46 (Mo. banc 1937). Having made this determination, the Court has a duty to adhere to and enforce it.

Citing the rule while excusing a violation, and thereby allowing the violator to profit from the disobedience, is not enforcement. Instead, enforcing this rule requires clear requirements regarding what is and is not allowed, together with predictable consequences to eliminate any incentive to violate the rule. It should go without saying that allowing the unauthorized practice of law to further the interests of the illegitimate

14

practitioner (and/or those of the "client") necessarily will increase the incidents of unauthorized practice and the harm that this Court has said such conduct causes.

Nor should there be any reason to hesitate about depriving a statutory entity of the effects of its unlicensed representative's actions in a particular case. It is not possible to engage in the unauthorized practice of law accidentally. Anyone asserting or defending claims on behalf of another in court knows that he or she is doing so. Moreover, those who act for a statutory entity also know (and, therefore, the entity knows) that a layperson cannot appear for the entity in court without engaging in the unauthorized practice of law.

This case makes these points well. Dilks – individually and as an agent for the Partnerships – knew that the Partnerships needed a licensed attorney to assert their claims in court, and he retained an attorney for that purpose. When that attorney later refused to represent the Partnerships, Dilks decided (on behalf of the Partnerships) that he would represent them – despite not being a licensed attorney – because he feared that the Partnerships' claims otherwise might be lost.[8]

---

[8] Dilks, and only Dilks, is responsible for his own choices and misconduct. It may be, however, that the fault for creating the circumstances that led to this misconduct should lie with Dilks' first lawyer. Accordingly, after the mandate issues in this case, the Court will request the Office of the Chief Disciplinary Counsel to investigate the conduct described in Dilks' affidavit. Obviously, that affidavit reflects only Dilks' version of these events and, therefore, the Court expresses no view about whether this investigation will or should show that violations of Rule 4 occurred. But it is an essential aspect of our self-regulated profession that, when a court receives information indicating a substantial likelihood that an attorney has engaged in unprofessional conduct, this information *must* be reported and investigated appropriately. *See* Rule 2-2.15(D).

15

Therefore, even though Dilks knew he was not authorized to represent the Partnerships in court, he violated this Court's prohibition against the unauthorized practice of law because he hoped that his illegal actions nevertheless would be given effect, resulting in a benefit both to the Partnerships' interests and to his own. It could not be any more plain: the Court's decision in this case either will discourage such actions in the future, or encourage them.

### 2.     *Rule 55.03(a) Does Not Apply to the Unauthorized Practice of Law*

Dilks argues that his actions should be analyzed under Rule 55.03(a). This argument is contrary both to the purpose of that rule and its plain language. Rule 55.03(a) provides:

> Every pleading, motion, and other filing **shall be signed by at least one attorney of record** in the attorney's individual name **or by the self-represented party**. ... An unsigned filing or an electronic filing without the required certification shall be stricken unless the omission is corrected promptly after being called to the attention of **the attorney or party filing same**.

The purpose of this rule is not to prevent the unauthorized practice of law. Instead, the purpose of Rule 55.03 is to ensure that every filing is properly ascribed to – and binding upon – the party filing it. Counsel of record are presumed, without any further showing, to be authorized to file papers on behalf of the party they represent and, more importantly, to bind that party to the arguments and facts contained therein. *Osborn*, 22 U.S. at 830-31. By the same token, an individual who signs and files a paper *pro se* (i.e., for himself) cannot dispute that the filing is binding on that individual. Rule 55.03 exists to ensure that this certainty, which should result from the requirement that

16

every party be self-represented or represented by counsel of record, is realized by requiring that all filings be signed by a party's counsel of record or directly by a self-represented party.

Not only is Rule 55.03(a) not designed to prevent the unauthorized practice of law, the plain language of this rule shows that it cannot apply to such situations. The first sentence of Rule 55.03(a) states that all filings must be signed by "an attorney of record … or by the self-represented party." The last sentence clarifies that a failure to do so can be corrected (in certain circumstances) only by "the attorney or party filing the same." These two sentences, read together, establish beyond any doubt that Rule 55.03(a) applies only to papers filed by – but without the signature of – an "attorney of record" or "the self-represented party." Accordingly, Rule 55.03(a) does not apply where a pleading is signed and filed by someone who is engaged in the unauthorized practice of law. Such a person, by definition, is not a "self-represented party" or an "attorney of record."

Here, it is nonsensical (not to mention a severe distortion of the facts) to suggest that the Partnerships are "self-represented parties" who filed the Original Petition in the circuit court but forgot to sign it. As statutory entities, the Partnerships cannot file or sign anything unless some individual performs those acts on their behalf. Nor was the Original Petition filed on behalf of the Partnerships by their "counsel of record" who forgot to sign it. Dilks is not a licensed attorney, nor did he "forget" to sign the petition. Accordingly, because the plain language of Rule 55.03(a) does not purport to apply to this situation, the Partnerships cannot avail themselves of the final sentence of Rule 55.03(a) to supply an "omitted" signature.

17

The Partnerships argue that this holding conflicts with *Glover v. State*, 225 S.W.3d 425 (Mo. banc 2007). This is incorrect. *Glover* involves an inmate's motion for post-conviction relief under Rule 29.15. As natural persons, inmates are entitled to file motions under Rule 29.15 on their own behalf. *See* 29.15(e) (anticipating motions will be filed *pro se*). In *Glover*, this Court held that a movant's failure to sign his initial Rule 29.15 motion cannot be used to attack the motion court's judgment on appeal, particularly where the inmate substituted a signed signature page promptly after the state called the omission to his attention. *Glover*, 225 S.W.3d at 427-28. Unlike the present case, *Glover* is a proper application of Rule 55.03. There was no unauthorized practice of law in *Glover* because the party who failed to sign the pleading was a natural person. Therefore, because the inmate's motion (unlike the Original Petition here) was filed by a party capable of self-representation, the plain language of Rule 55.03(a) was applicable.

The Partnerships' reliance on *Hensel v. American Air Network*, 189 S.W.3d 582 (Mo. banc 2006), is misplaced for many of the same reasons. There, the plaintiffs were individuals who were represented both by a Kentucky attorney and an attorney licensed by this Court. *Id.* at 583. Plaintiffs' Kentucky counsel signed their petition, and the Missouri attorney filed it, along with a motion that Kentucky counsel be admitted to practice *pro hac vice*. Though this motion ultimately was sustained, permission to appear *pro hac vice* was delayed because the motion initially was incomplete. As a result, the Kentucky counsel of record who signed the petition on behalf of the plaintiffs was not entitled to practice in this state at the time the petition was filed. *Id.* This Court held that, even assuming that (1) Kentucky counsel's signature failed to comply with Rule 55.03

18

because permission to appear *pro hac vice* was not granted before (or contemporaneously with) the filing of the petition, and (2) Missouri counsel's initials (added when it appeared that the *pro hac vice* motion would be delayed) were not sufficient for purposes of Rule 55.03(a), the plaintiffs were natural persons who were capable of self-representation and, therefore, were entitled to cure their missing signature in a prompt manner. *Id*. at 584 (noting that the holding was limited to circumstances "involving an individual").

Moreover, this Court in *Hensel* specifically warned against future attempts to extend its rationale to cases in which the party is a statutory entity:

> The rule is different with respect to filings on behalf of a corporation. *Reed v. Labor and Indus. Relations Comm'n,* 789 S.W.2d 19, 23 (Mo. banc 1990) ("It is axiomatic that a corporation must act through an attorney in all legal matters").

*Id.* at 584 n.3.

By holding that Dilks' actions constituting the unauthorized practice of law must not be given effect, the Court keeps faith with the warning given in *Hensel* and with the holding of numerous earlier cases. *See, e.g., Reed*, 789 S.W.2d at 23 ("filings by a lay person on behalf of a corporate employer will be considered … null and void") (*citing Prop. Exch. & Sales, Inc., (PESI) by Jacobs v. Bozarth*, 778 S.W.2d 1, 3 (Mo. App. 1989) (dismissing petition because "a corporation cannot act in legal matters or maintain litigation without the benefit of an attorney"); *Credit Card Corp. v. Jackson Cnty. Water Co.*, 688 S.W.2d 809, 811 (Mo. App. 1985) (dismissing appeal because appellant

corporation was not represented by counsel).[9] Actions taken in court by a layperson on behalf of another may not be given effect and, when objected to in a timely manner, must be stricken.

The Partnerships contend that *Reed* was "severely restricted, if not reversed" by *Haggard v. Div. of Employment Sec.*, 238 S.W.3d 151, 154 (Mo. banc 2007). This is incorrect. *Haggard* reaffirms the principle that – in the absence of special dispensation from this Court – only natural persons are entitled to appear on their own behalf. *Id.* at 154 ("DES is not entitled to be represented by a non-lawyer employee"). Moreover, the Court held that "[o]ne cannot consent to the unauthorized practice of law" or waive the requirement that all parties other than natural persons be represented by licensed attorneys. *Id.*

---

[9] This rule is so well established that the Court rarely has had cause to address it. The court of appeals, on the other hand, is well-schooled in its application. *See, e.g., Palmore v. City of Pac.*, 393 S.W.3d 657, 664 (Mo. App. 2013) (because "application for trial *de novo* was not filed by an attorney, its application was void *ab initio*"); *6226 Northwood Condo. Ass'n v. Dwyer*, 330 S.W.3d 504, 506 (Mo. App. 2010) ("where a representative engages in the unauthorized practice of law, the proper remedy is to dismiss the cause or treat the actions taken by the representative as a nullity") *Schenberg v. Bitzmart, Inc.*, 178 S.W.3d 543, 544 (Mo. App. 2005) ("normal effect of a representative's unauthorized practice of law is to dismiss the cause or treat the particular actions taken by the representative as a nullity"); *Joseph Sansone Co. v. Bay View Golf Course*, 97 S.W.3d 531, 532 (Mo. App. 2003) ("action taken on behalf of a corporation by a non-attorney representative may be void and can result in dismissal"); *Strong v. Gilster Mary Lee Corp.*, 23 S.W.3d 234, 241 (Mo. App. 2000) (filings "by a person unauthorized to practice law are a 'nullity,' and hence may properly be dismissed"); *Sellars By & Through Booth v. Denney*, 945 S.W.2d 63, 66 (Mo. App. 1997) (because an unlicensed individual may not represent another person in court, "the notice of appeal and brief … are nullities"); *Stamatiou v. El Greco Studios, Inc.*, 935 S.W.2d 701, 702 (Mo. App. 1996) (pleading filed by corporate officer who was not a licensed attorney "was not properly before the circuit court … and the circuit court should have dismissed it without considering its allegations"); *Risbeck v. Bond*, 885 S.W.2d 749, 750 (Mo. App. 1994) (where corporation was "represented by a person unauthorized to do so, the trial court properly dismissed the petition"); *Show-Me Restoration Servs. v. Harlan*, 778 S.W.2d 350,

But where a party fails to object promptly to such conduct, *Haggard* holds that the party cannot later attack the validity of a judgment or other ruling by the court or administrative tribunal before which the improper representation occurred. *Id.* at 155-56. In other words, it is only actions constituting the unauthorized practice of law that must not be given effect; the proceedings in which that conduct occurs remain valid. True jurisdictional prerequisites in our courts are rare, and a perfect array of properly represented parties is not one of them. *Id.* at 155. *See also J.C.W. ex rel. Webb v. Wyciskalla*, 275 S.W.3d 249, 254 (Mo. banc 2009). Accordingly, *Haggard* did not take issue with the application in *Reed* of the long-standing rule that pleadings signed and filed by those who are engaged in the unauthorized practice of law for parties that are not capable of self-representation are "null and void." Instead, *Haggard* holds only that judgments resulting from proceedings in which that conduct occurs may not be attacked on that basis when no objection to the conduct was asserted in a timely manner.[10]

---

351 (Mo. App. 1989) (papers stricken because "filed by plaintiff's vice president and co-owner [who is] not an attorney").

[10] Of course, no objection or motion is required for a court to act *sua sponte* to strike filings on this basis. *Haggard*, 238 S.W.3d at 154 (parties "cannot consent to the unauthorized practice of law"). But, as a practical matter, the parties are in a superior position to identify misconduct of this type. Trial courts cannot monitor every filing in every case and may have no occasion to review any filing in a given case until that case (or some part of it) is presented for decision, at which time the court's attention properly is on the merits of the dispute and not the propriety of the parties' representation.

21

## III.    Conclusion

For the reasons stated above, the judgment of the trial court is affirmed.[11]

_____
Paul C. Wilson, Judge

---

[11]    The briefs and arguments of all parties claim that there was general agreement in the trial court that the Partnerships' claims are subject to a five-year statute of limitations and, therefore, those claims would be barred if not asserted in the Original Petition.  On appeal, the Partnerships contend that the trial court shared this assumption and that this assumption is reflected in the judgment.  This Court disagrees.  None of the Defendants' motions to dismiss argued that the Partnerships' claims would be barred unless filed on or before September 21, 2011, or that any attempt by the Partnerships to bring their claims after that date would not relate back to the Original Petition, which all parties concede was effective for purposes of asserting Dilks' claims.  Therefore, whatever the trial court's beliefs may have been concerning the applicable statute of limitations, that issue was not addressed in the judgment.  Consequently, this Court makes no determination as to the applicable limitation period(s) or whether any claim is or is not barred.  If the Partnerships, through counsel, seek leave in an appropriate motion to assert their claims as the case progresses, nothing in this opinion should be taken as expressing any view regarding whether such a motion should be sustained or, if sustained, whether such claims relate back under Rule 55.33 to September 21, 2011, when Dilks' claims first were filed. *Compare Thompson v. Brown & Williamson Tobacco Corp.*, 207 S.W.3d 76, 117 (Mo. App. 2006) (holding amendment adding a new plaintiff and new claim related back to original plaintiff's date of filing) *with Caldwell v. Lester E. Cox Med. Centers-S., Inc.*, 943 S.W.2d 5, 9 (Mo. App. 1997) (holding father's amendment adding son's lost chance of survival claim in father's capacity as plaintiff *ad litem* did not relate back to original wrongful death claim filed in father's individual capacity).

22