

# In the Missouri Court of Appeals
## Eastern District
### DIVISON FOUR

D. WAYNE MAYER, TRUSTEE, JOHN J. )
STOCK TRUST and RONALD J. NOLLE, )
TRUSTEE, OSCAR A. NOLLE TRUST, )
                        )

     Appellants,               )

vs.                                )

                                )

LINDENWOOD FEMALE COLLEGE )
d/b/a LINDENWOOD UNIVERSITY, )
                        )

     Respondents.          )

No. ED100587

Appeal from the Circuit Court of
St. Charles County

Honorable Richard K. Zerr

Filed: November 18, 2014

### *Introduction*

D. Wayne Mayer, acting in his capacity as trustee of the John J. Stock Trust, and Ronald A. Nolle, acting in his capacity as trustee of the Oscar A. Nolle Trust (collectively, "Trusts"), appeal the trial court's judgment in favor of Lindenwood University on its action for a judgment declaring that the proposed redevelopment of the Trusts' property would not constitute a breach of the lease or waste. The Trusts also appeal the trial court's judgment in favor Lindenwood on the Trusts' action seeking damages for breach of the lease and waste. Because Mr. Mayer and Mr. Nolle, who are not licensed attorneys, filed the notice of appeal as trustees on behalf of the Trusts, and thereby engaged in the unauthorized practice of law, we dismiss the appeal.

*Factual and Procedural Background*

The John J. Stock Trust and Oscar A. Nolle Trust each own an undivided one-half interest in land located at 2000 First Capital Drive (Property) in St. Charles. In December 1956, the Trusts executed a ninety-nine year lease agreement (Lease) with East Grand Realty Co.

The Lease granted the lessee broad authority to use the property "for any lawful purpose . . . for and during the term of Ninety-nine (99) years commencing on the First day of December, and ending on the Last day of November, 2055 . . . ." The Lease provided the lessee:

> . . . the sole exclusive right to erect, build, repair, change, alter or otherwise construct such buildings, appurtenances, or other improvements for commercial use as the Lessee in its sole discretion may determine, so long as same are in no instance used for an unlawful purpose, and so long as the value of such improvements shall not be diminished to less than One Hundred Thousand Dollars ($100,000.00) as the result of such work.

In consideration for the leasehold rights, the lessee agreed to pay the Trusts $6,000 per year in rent and to construct "one or more commercial type buildings of sound construction . . .which . . . shall cost an aggregate minimum of One Hundred Thousand Dollars ($100,000.00). . . ."[1]

In regard to forfeiture, the Lease stated that "upon failure by Lessee . . . to keep and perform any of the [] covenants, conditions, agreements, and stipulations herein contained . . . the Lessors may cause a forfeiture of this lease and right of reentry into the demised premises, by serving notice of such forfeiture and right of reentry upon the Lessee . . . ." Such notice "shall state the cause or grounds for which the right of forfeiture and reentry is claimed" and "shall be mailed . . . at least six (6) months before the same shall authorize said forfeiture or reentry by Lessors . . . ."

---

[1] The Lease provided for the removal of existing structures on the Property, which included a one-story corner building, two residences, a steel garage, and underground storage tanks and oil equipment.

Between January 1957 and 1960, East Grand Realty removed the then-existing structures from the Property and constructed a 15,000-square-foot commercial building (Original Building). The Original Building housed a Kroger Grocery Store and later Hackmann Lumber Co. After Hackmann Lumber vacated the Property in 2003, the Original Building remained unoccupied.

In December 2006, East Grand Realty assigned the Lease to Lindenwood. The Property was one of sixty parcels of land, totaling over thirty acres, upon which Lindenwood planned to construct a mixed-use development called "University Commons" (Development). Lindenwood's plans included demolishing the Original Building and constructing a new building – a free-standing, multi-tenant 12,600-square-foot commercial structure (New Building) – on the Property. In Spring 2011, Lindenwood applied for various construction and demolition permits from the City of St. Charles.

On May 17, 2011, the Trusts sent the first in a series of letters to Julie Mueller, Lindenwood's vice president for operations and chief operating officer. In the letter, the Trusts accused Lindenwood of breaching the Lease, requested proof that Lindenwood had insured the Property "in compliance with the terms of the Lease," and demanded that Lindenwood either "voluntarily terminate the lease" or "purchase [] our fee simple interest in the property. . . ." Ms. Mueller responded by letter on May 28, 2011 and provided proof of insurance coverage for 2011. Ms. Mueller also communicated Lindenwood's position that: "[A]s long as rents are paid and your heirs receive possession of the tract in 2055 with a commercial building on it worth at least $100,000, the terms of the lease are satisfied." The parties exchanged several more letters over the next two years. Despite the Trusts' objections, Lindenwood demolished the Original Building in June 2012.

3

On May 9, 2013, the Trusts erected a "No Trespassing Sign" on the Property. In response, Lindenwood filed a petition in the Circuit Court of St. Charles County seeking a judgment "[d]eclaring that Lindenwood's development of the [Property] and accompanying change, alteration and/or rebuilding of the Original Building" constituted neither breach of the Lease nor waste. On the same day, the Trusts filed a petition for breach of lease and a motion for preliminary injunction. At the Trusts' request, the trial court consolidated the cases.[2]

The trial court conducted a bench trial in July 2013 and entered judgment in favor of Lindenwood on August 16, 2013. In its thirty-five-page order and judgment, the trial court found that "Lindenwood was contractually allowed to remove the Original Building because there is no express restriction against doing so, and because the Original Building will be replaced with a building that is indisputably worth more than $100,000."[3] The trial court also concluded that the Trusts failed to demonstrate that the Development "will cause waste to their reversionary interest or the fair market value of the [Property]." Finally, the trial court rejected the Trusts' claims for breach of the Lease because: (1) the Trusts did not demand an inspection of the Property, identify the major repairs the Trusts claimed were necessary, and provide the required six-month notice that Lindenwood would breach the lease on a specific date if it failed to cure the alleged breaches; (2) Lindenwood provided the Trusts proof of insurance upon

---

[2] On June 6, 2013, Lindenwood filed a motion for temporary restraining order against the Trusts. The following day, the trial court entered an "agreed preliminary injunction" stating that the Trusts "are enjoined and restrained from depriving Lindenwood of full possession and use of the premises by seeking to expel Lindenwood, making criminal allegations of trespass against Lindenwood and/or physically attempting to bar or interfere with Lindenwood's proposed construction on and development of the [Property]."

[3] Specifically, the trial court found the New Building "will add over $1.6 million in current fair market value to the Premises" and "will increase [the Trusts'] reversionary interest by over 20% . . . ."

demand and presented evidence that the Property "was always insured by Lindenwood"; and (3) the Lease did not prohibit removal of the Original Building.[4]

The Trusts filed motions to amend and vacate the judgment. The trial court heard arguments on the Trusts' motions. On September 27, 2013, the trial court entered a judgment denying the Trusts' after-trial motions. On October 7, 2013, the trustees, Mr. Mayer and Mr. Nolle (Trustees), acting pro se on behalf of the Trusts, filed a notice of appeal.[5] Neither Mr. Mayer nor Mr. Nolle is a licensed attorney.

On March 31, 2014, this court *sua sponte* notified the parties that "there is an issue in this appeal about whether the trustee of a trust can appear pro se" and ordered them to address the issue in their respective appellate briefs. Counsel for the Trusts entered his appearance on April 29, 2014. Counsel filed his brief on May 9, 2014, asserting in a footnote that the issue of whether a trust may appear pro se "is moot, because after receiving the [March 31] Order they promptly secured counsel."

On May 15, 2015, we issued a second order, which stated:

> Counsel has entered an appearance on behalf of the appellants and requested an extension of time to file appellants' brief. Appellants' motion is granted until June 9, 2014.
> Counsel asserts that the issue of a trustee proceeding pro se which the Court instructed appellants to brief is now moot. This may not be the case. See Naylor Senior Citizens Housing, L.P. v. Sides Construction, No. SC93404 (Mo. Banc February 25, 2014) at pp. 13-16 (addressing the consequences of a non-attorneys filings on behalf of an entity required to be represented by counsel).

---

[4] Additionally, the trial court held that the Trusts did not breach the covenant in the Lease to submit any dispute to arbitration because the Trusts did not "invoke the arbitration provision" and Lindenwood did not refuse arbitration.

[5] In their briefs, the Trusts claimed: "Although the Trusts were represented below, they were unable to file a notice of appeal through an attorney, because it was not until October 7, 2013, that the Trusts learned of the appeal deadline, when their trial counsel sent an email stating, 'the Notice of Appeal must be filed before the end of the day today, Monday, October 7, 2013.'"

5

This issue shall continue to be addressed in accordance with this Court's order of March 31, 2014.

On June 9, 2014, the Trusts filed an amended brief in which they addressed issue of whether a trustee may appear pro se on behalf of a trust.

## *Discussion*

The Trusts claim the trial court erred in ruling that Lindenwood's proposed redevelopment of the Property would not constitute a breach of the Lease (Point I) or waste (Point II) because the Lease did not grant Lindenwood the right to "dispose of" or "convert to its own use" the soil, subsurface soil, and attached appurtenances. The Trusts further argue that the trial court erred in finding that the Trusts failed to prove that Lindenwood breached the Lease (Point III). Lindenwood counters that the trial court properly found that the Lease granted Lindenwood the right to demolish the Original Building, construct the New Building, and perform the necessary grading. Additionally, Lindenwood asserts that it will not commit waste by completing the Development because "the value of the property and the Trusts' reversionary interests will increase[.]"

Before we consider the merits of the Trusts' points on appeal, we determine the effect of the Trustees' filing of a pro se notice of appeal on behalf of the Trusts. See Stamatiou v. El Greco Studios, Inc., 935 S.W.2d 701, 702 (Mo.App.W.D. 1996). Lindenwood asserts that we must dismiss the Trusts' appeal because the Trustees engaged in the unauthorized practice of law when they filed the notice of appeal. The Trusts counter that the Trustees' pro se appearance "should not preclude the Court's reaching the merits of the appeal" because "there was no timely objection," "[t]he Trusts' current representation by counsel moots the issue," and "no Missouri case holds that a trustee of a trust . . . may not proceed pro se."

6

*1. Effect of Lindenwood's failure to object to the notice of appeal.*

As an initial matter, we address the Trusts' assertion that this court must give effect to the notice of appeal because, "[e]ven if the pro se filing of the Notice of Appeal were somehow improper, there was no timely objection." In <u>Naylor</u>, the Supreme Court held that "[a]ctions taken in court by a layperson on behalf of another may not be given effect and, *when objected to in a timely manner*, must be stricken." <u>Naylor Senior Citizens Hous., LP v. Side Const. Co.</u>, 423 S.W.3d 238, 250 (Mo. banc 2014) (emphasis added). The Court did not define "timely manner," but it explained that, where a party fails to object to such conduct, that "party cannot later attack the validity of a judgment or other ruling by the court . . . before which the improper representation occurred." <u>Id.</u> (citing <u>Haggard v. Div. of Employment Sec.</u>, 238 S.W.3d 151, 155-56 (Mo. banc 2007)). Importantly, the Court also noted that "no objection or motion is required for a court to act *sua sponte* to strike the filings on this basis." <u>Id.</u> at 251 n.10.

The Trustees signed and filed the notice of appeal on October 15, 2013. On January 2, 2014, the Trustees filed a motion for an extension of time to file the record on appeal, which this court granted. On March 10, 2014, the Trustees filed, and this court accepted the legal file and transcript. On March 31, 2014, we entered an order *sua sponte* identifying the issue of "whether a trustee of a trust can appear pro se" and requiring the parties to "address this issue in their respective briefs." The Trusts subsequently retained counsel who filed an amended brief on June 9, 2014 addressing the issue as required by this court.

The Trusts argue that dismissal of their appeal is improper because, "in the many months that passed after the October 2013 filing of the Notice of Appeal, [Lindenwood] never objected to the Notice of Appeal." Although Lindenwood did not urge this court to dismiss the Trustees' appeal on unauthorized-practice-of-law grounds until it filed its brief on July 9, 2014, "'[o]ne

7

cannot consent to the unauthorized practice of law' or waive the requirement that all parties other than natural persons be represented by licensed attorneys." Id. at 250 (quoting Haggard, 238 S.W.3d at 154).

Additionally, the Trusts assert that, because this court accepted several of the Trustees' pro se filings, we cannot dismiss the appeal on the grounds that the Trustees' act of filing the notice of appeal constituted the unauthorized practice of law. The record reveals that this court accepted the notice of appeal, granted the Trustees' motion for extension of time to file the record on appeal, and received the legal file and transcript, all of which the Trustees filed without legal representation. However, the Trusts cite, and we find, no authority for the proposition that, if this court does not promptly reject the filings of one engaged in the unauthorized practice of law, we must give effect to those filings. To the contrary, our Supreme Court is clear that it is the judiciary's duty to regulate the practice of law and a *sua sponte* strike of the filings of a nonattorney who purports to represent another in court is entirely consistent with the judiciary's duty. See Naylor, 423 S.W.3d at 245, 251 n.10.

2. *Whether the Trustees' actions constituted the unauthorized practice of law.*

Missouri limits the practice of law, both in and out of its courts, to "persons with specific qualifications and duly licensed as attorneys." Strong v. Gilster Mary Lee Corp., 23 S.W.3d 234, 238 (Mo.App.E.D. 2000) (quotation omitted); see also Mo. Rev. Stat. § 484.020.1. Although our courts have struggled to formulate a "precise and comprehensive definition of the practice of law," it is clear that "the act of appearing in court to assert or defend claims on behalf of another lies at the very heart of the practice of law." Naylor, 423 S.W.3d at 245; see also Mo. Rev. Stat. § 484.010.1. Because Missouri prohibits the unauthorized practice of law, "actions constituting the unauthorized practice of law must not be recognized or given effect." Naylor, 423 S.W.3d at

8

247. "The normal effect of a representative's unauthorized practice of law is to dismiss the cause or treat the particular actions taken by the representative as a nullity." Schenberg v. Bitzmart, Inc., 178 S.W.3d 543, 544 (Mo.App.E.D. 2005). Importantly, our courts have held that a notice of appeal filed on behalf of another by a nonattorney is null and void. See Joseph Sansone Co. v. Bay View Golf Course, 97 S.W.3d 531, 532 (Mo.App.E.D. 2003); Sellars By & Through Booth v. Denney, 945 S.W.2d 63, 66 (Mo.App.S.D. 1997).

Missouri courts have not directly addressed the question of whether a nonattorney trustee representing the interests of a trust engages in the unauthorized practice of law when he or she appears pro se. However, we find the Supreme Court's recent decision in Naylor instructive. There, the nonattorney managing partner of two partnerships signed and filed a petition seeking damages in negligence on behalf of himself and the partnerships. 423 S.W.3d at 240. The defendants moved to dismiss the action on the grounds that the partner who signed the petition could not represent the partnerships because he was not a licensed attorney. Id. at 241. The partner and partnerships responded through a licensed attorney, but did not file or seek leave to file a "corrected" signature page for the original petition pursuant to Rule 55.03(a). Id. The trial court dismissed the partnerships' claims on the grounds that the nonattorney partner's filing of the petition constituted the unauthorized practice of law. Id. at 242.

The Naylor Court affirmed the trial court's dismissal of the partnerships' claims and held that, unlike a natural person who is generally entitled to appear and assert claims on his or her own behalf in Missouri courts, a statutory entity, such as a corporation or limited partnership, may appear only through a licensed attorney. Id. at 243. The Court reasoned that "[w]hen an individual appears *pro se*, i.e., for himself, that person is not engaging in the practice of law because he is not representing **another** in court." 423 S.W.3d at 245 (emphasis in original). In

9

contrast, a statutory entity or "legal fiction" cannot "be anywhere or do anything – including, but not limited to, appearing in court – unless some individual does so on its behalf." Id. at 244. Such an individual, acting on behalf of the statutory entity "by definition is 'representing another' in court and, therefore, necessarily is engaging in the practice of law." Id. at 246. Because Missouri courts restrict the practice of law to licensed attorneys, a statutory entity's representative must be a licensed attorney.[6] Id.

The Trusts assert that the rule requiring statutory entities to appear only through counsel does not apply to trusts because "a trust is unlike a statutory business entity, because a trustee has a special . . . interest in the trust." Under Missouri law, "[t]he trustee is the legal owner of the trust property, in which the beneficiaries have equitable ownership." Thompson v. Koenen, 396 S.W.3d 429, 435 (Mo.App.W.D. 2013). In contrast to a corporation, a trust is not a legal entity and lacks the capacity to sue or be sued. Pauli v. Spicer, No. ED 101231, 2014 WL 5139384, *7 (Mo.App.E.D. Oct. 14, 2014) (holding that trustees and beneficiaries are necessary and indispensable parties in actions involving trust property); see also Sunbelt Envt'l Servs., Inc. v. Rieder's Jiffy Market, Inc., 138 S.W.3d 130, 134 (Mo.App.S.D. 2004).

Even though a trust is not considered a legal entity, "in practice trustees act on behalf of their trusts and are sued as trust representatives." Restatement (Third) of Trusts 6 21 Intro. Note (2012). Pursuant to Missouri law governing a trustee's duty to administer the trust, "the trustee shall administer the trust in good faith, in accordance with its terms and purposes and the interests of the beneficiaries." Mo. Rev. Stat. § 456.8–801; see also Betty G. Weldon Revocable Trust ex rel. Vivion v. Weldon ex rel. Weldon, 231 S.W.3d 158, 180 (Mo.App.W.D. 2007).

---

[6] The Court noted that its analysis did not apply to general partnerships, which are "fundamentally different" in that, under Missouri law, "a general partnership has no legal existence apart from its members." Naylor, 423 S.W.3d at 243 n.3 (internal quotation omitted).

Additionally, Section 456.8-802 mandates that "[a] trustee shall administer the trust solely in the interests of the beneficiaries." Mo. Rev. Stat. § 456.8-802; see also Betty G. Weldon Revocable Trust, 231 S.W.3d at 180.

Numerous courts have held that a non-attorney trustee may not appear pro se in a representative capacity.[7] Although it has no precedential value, we find persuasive the reasoning of In re Guetersloh, 326 S.W.3d 737 (Tex.App. 2010). In that case, James Guetersloh was trustee and beneficiary of a trust. 326 S.W.3d at 738. The other beneficiaries filed suit against Guetersloh, in his capacity as trustee, seeking termination of the trust and distribution of the trust property. Id. When Guetersloh, acting pro se, filed an answer and motion to transfer, the trial court *sua sponte* "found that the trustee of a trust cannot appear in court *pro se* because to do so would amount to the unauthorized practice of law." Id. at 739.

Guetersloh did not obtain legal counsel, but instead sought a writ of mandamus ordering the trial court to allow him to appear pro se on behalf of the trust because, as trustee, "he is the actual party to the suit[.]" Id. The Texas Court of Appeals held that the trial court did not err in prohibiting Guetersloh, in his capacity as trustee, from appearing without legal representation "because in that role he is appearing in a representative capacity rather than in *propia persona*." Id. at 740. The court explained: "Because of the nature of trusts, the actions of the trustee affect the trust estate and therefore affect the interests of the beneficiaries." Id. Accordingly, "if a non-attorney trustee appears in court of behalf of the trust, he or she necessarily represents the

---

[7] See In re Guetersloh, 326 S.W.3d 737, 740 (Tex.App. 2010); Gorelick v. Montanaro, 119 Conn.App. 785,793 (Conn.App. Ct. 2010); Lee v. Catron, Catron & Pottow, P.A., 145 N.M. 573, 574 (N.M. Ct. App. 2008); Ziegler v. Nickel, 64 Cal.App.4th 545, 549 (Cal. Ct. App. 1998); Salman v. Newell, 110 Nev. 1333, 1335 (Nev. 1994); Back Acres Pure Trust v. Fahnlander, 233 Neb. 28, 29 (Neb. 1989); C.E. Pope Equity Trust v. U.S., 818 F.2d 696, 698 (9th Cir. 1987).

11

interests of others, which amounts to the unauthorized practice of law." Id. (citing Ziegler, 64 Cal.App.4th at 549).

In the instant case, Mr. Mayer and Mr. Nolle, as trustees, managed the Property for the benefit of the Trusts' beneficiaries. Indeed, Mr. Mayer testified, that "as a trustee, that's one of my responsibilities is to – to the grandchildren that I represent . . . . I represent thirteen grandchildren who are on my side . . . ." As trustees, Mr. Mayer and Mr. Nolle did not represent their own interests alone, but rather the interests of all the Trusts' beneficiaries. Thus, when the Trustees appeared on behalf of the Trusts, they were necessarily representing the interests of others in court, which constitutes the unauthorized practice of law. See, e.g., Naylor, 423 S.W.3d at 246; Joseph Sansone Co., 97 S.W.3d at 532.

The Trusts suggest that the Trustees did not engage in the unauthorized practice of law because the "filing of a notice of appeal is a ministerial act." We recognize that "[t]echnical adherence to the formal averments of a notice of appeal is not jurisdictional, and the averments are to be liberally construed to permit appellate review so long as the opposing party is not misled to his or her irreparable harm." McCrainey v. Kansas City Mo. Sch. Dist., 337 S.W.3d 746, 751 (Mo.App.W.D. 2011). However, the Trustees' pro se filing of the notice of appeal was not merely a technical defect. This court has repeatedly held that the act of filing a notice of appeal on behalf of another constitutes the practice of law and must therefore be performed by a licensed attorney. See Joseph Sansone, 97 S.W.3d at 532; Sellars By & Through Booth, 945 S.W.2d at 66; see also Reed v. Labor & Indus. Relations Com'n, 789 S.W.2d 19, 23 (Mo. banc 1990) (an attorney must file an application for review to the Labor and Industrial Relations Commission because it "constitutes assertions of legal rights.").

12

The Trusts contend that the issue of whether the trustee of a trust can appear pro se "is moot" because "[a]fter receiving the [March 31, 3024] order, the Trusts promptly secured counsel" and "[t]he participation by the non-attorney trustees was minimal, as the substantive brief was filed by counsel." The Supreme Court addressed a similar argument in <u>Naylor</u>, where the partner and partnerships retained counsel after the defendants filed their motions to dismiss. <u>Naylor</u>, 423 S.W.3d at 241. On appeal, the partnerships argued that the managing partner's "unauthorized practice of law should be treated – at least for a while – as though it *was* authorized." <u>Id.</u> at 246 (emphasis in original). The Supreme Court firmly rejected this proposition, stating: "The acts of someone engaged in the unauthorized practice of law may not be given effect as though the practice was authorized." <u>Id.</u> The Court explained: "To take any other position would be to say that the unauthorized practice of law is not really wrong, merely less preferred than the authorized practice; or that laypersons may represent others . . . in court, but only for a limited time." <u>Id.</u> at 247.

Finally, the Trusts argue that this court should give effect to the Trustees' pro se notice of appeal because "the circumstances of this case warrant a decision on the merits." Specifically, the Trusts allege that: "they were unable to file a notice of appeal through an attorney, because it was not until October 7, 2013, that the Trusts learned of the appeal deadline"; "the nonattorneys' conduct in filing the Notice of Appeal was done without knowledge that doing so might be improper"; and "Lindenwood is not prejudiced by having this appeal hear[d] on the merits[.]"

In support of their position, the Trusts cite <u>Downtown Disposal Servs., Inc. v. City of Chicago</u>, 979 N.E.2d 50 (Ill. 2012). In that case, an administrative agency entered four default judgments against a corporation, and the corporation's president "filled out four blank *pro se* complaints for administrative review." 979 N.E.2d at 51-52. The Illinois Supreme Court held

that the president engaged in the unauthorized practice of law when he filed the complaints for administrative review, but it declined to apply the "automatic nullity rule." Id. at 54. Instead, that court held: "In situations where a nonattorney signs a complaint for administrative review on behalf of a corporation, the trial court should afford the corporation an opportunity to retain counsel and amend the complaint if the facts so warrant."[8] Id. at 58.

Not only does the Downtown Disposal decision lack precedential value, but it treats the unauthorized practice of law as a "curable defect" and employs a fact-based approach previously rejected by our Supreme Court in Naylor. 423 S.W.3d at 247. In Naylor, the Supreme Court declared: "The Court will not send such mixed signals by substituting the fairness and predictability of this bright-line rule with a situational ethic based upon a *post hoc* weighing of circumstances and balancing of harms." Id.

### *Conclusion*

The Trusts' appeal is dismissed.

_____
Patricia L. Cohen, Presiding Judge

Roy L. Richter, J., and
Robert M. Clayton III, J., concur.

_____

[8] The Illinois Supreme Court stated that, when deciding whether to dismiss a nonattorney representative's petition, courts should consider the following factors: "whether the nonattorney's conduct is done without knowledge that the action was improper, whether the corporation acted diligently in correcting the mistake by obtaining counsel, whether the nonattorney's participation is minimal, and whether the participation results in prejudice to the opposing party." Downtown Disposal, 979 N.W.2d at 57.